### IN THE

## COURT FOR THE CORRECTION OF ERRORS

### OF THE

## STATE OF NEW-YORK,

DURING THE YEAR 1831.

## WOOD *vs.* JACKSON, ex dem. Genet and others.

A defendant in an action of *ejectment*, for the purpose of shewing an *estoppel*, may produce the record of a recovery in an action of *assumpsit* against the lessors of the plaintiff, in which they were sued as *heirs and devisees* and pleaded *riens per descent* or devise, and which issue was found against them, and give *parol evidence* that on the trial of the issue of *riens per descent*, the validity of the deed under which a recovery is sought in the action of ejectment, was submitted to and passed upon by the jury in such former action, and the same pronounced invalid.

A former judgment may be given in evidence, accompanied with such parol proof as is necessary to shew the grounds upon which it proceeded, where such grounds from the form of the issue do not appear by the record itself, provided that the matters alleged to have been passed upon be such as might legitimately have been given in evidence under the issue joined, and such that when proved to have been given in evidence, it is manifest by the verdict and judgment that they must have been directly and necessarily in question and passed upon by the jury,

Where a party may avail himself of a former verdict or decree by way of *estoppel*, he must *plead* the same in bar of a suit, or in answer to a plea, or he will be deemed to have waived the estoppel, and to have consented that the jury shall re-investigate the facts, and find according to the truth of the case. A former verdict is not *conclusive* as *evidence;* it is so only when *pleaded.* This rule, however, does not apply to actions of *ejectment* or *assumpsit,* nor to cases where the plaintiff's title is by estoppel, or where the party has had no opportunity to plead the matter specially as at bar.

VOL. VIII.                    2

ALBANY,
Dec. 1829.

Wood
v.
Jackson.

The fact that a judgment has been reversed, and the verdict upon which it
is founded set aside, is a complete answer to a verdict urged by way of es-
toppel. A purchaser under a judgment may claim every benefit which the
judgment creditor could have claimed, had he been the purchaser, and,
notwithstanding the reversal of the judgment, is entitled to the land pur-
chased while the judgment was in existence, but not to the benefit of a col-
lateral fact, settled by a verdict set aside as illegally rendered.

A *voluntary conveyance*, not actually fraudulent as relates to the grantee, may
become valid by matters *ex post facto*, as by a purchase for valuable consid-
eration, or by the marriage of the grantee, if a *feme :* marriage, if the con-
veyance forms an inducement thereto, renders the conveyance valid not on-
ly as against a subsequent purchaser, but against the creditors of the gran-
tor.

Where lands are sold under an execution, on a judgment subsequently re-
versed, the fact of the owner receiving the surplus of the avails of the sale
after satisfying the execution, will not, *it seems*, be considered such an ac-
quiescence in the sale to prevent his setting up his title, if the owner did not,
by any act of his, encourage the purchaser to bid at the sale.

ERROR from the supreme court. This was an action of
ejectment for the recovery of a house and lot in the city of
New-York, known as No. 11, Cherry street. The lessors of
the plaintiff claimed to recover under a conveyance from *Ma-
ria Osgood*, to her daughter Martha Brandon Osgood, bearing
date the 31st May, 1814, executed in consideration of natural
love and affection. Martha Brandon Osgood was married to
Edmund C. Genet in the latter part of July, 1814, and it was
proved that previous to the marriage, Genet knew that the
house and lot had been given by Mrs. Osgood to her daugh-
ter, and stated the fact to a friend as an inducement to the
marriage, observing that his intended wife would be no ex-
pense to his children by a former marriage. This evidence
was objected to as irrelevant and improper, but received by the
circuit judge. The house and lot No. 11, Cherry street, was
occupied by a tenant at the time of the conveyance to Mar-
tha Brandon Osgood; whether the rent which became due in
August, 1814, was paid to Mrs. Osgood or to Mr. Genet, did
not clearly appear; but the rent accruing subsequently, up to
1818, was paid to Mr. Genet, who also made some repairs of
the premises. Maria Osgood died in October, 1814.

The defence set up was, that the conveyance to Martha
Brandon Osgood being voluntary, was fraudulent and void as

against the creditors of the grantor, Maria Osgood, who, it was alleged at the time of her death, was indebted beyond the amount of her property; that, among others, she owed the President and Directors of the Manhattan Company $6000, for the recovery of which a suit at law was commenced against her *heirs* and *devisees*, in which Genet and wife being parties, pleaded *riens per descent* or devise; that under the issue joined upon such plea, the jury found the conveyance to Martha Brandon Osgood fraudulent and void as against the plaintiffs in that suit; that judgment was rendered upon such verdict, an execution issued, and the premises in question sold and bought in by one James Sterling, from whom the defendant derived his title; and that Genet, by receiving the surplus of the avails of the property, and by other acts of acquiescence, had concluded himself from questioning the validity of the sale, and the title thereby acquired. In support of this defence, there was produced the *record of a recovery* in a suit brought by the President and Directors of the Manhattan Company against the children of Mrs. Osgood, charging four of them as *heirs and devisees*, and three of them as *heirs* only; among the former were Genet and wife. The declaration charged Mrs. Osgood as the endorser of two promissory notes made by her son Walter Franklin Osgood, one bearing date 25th July, 1814, and the other 10th August, 1814, amounting, together, to $6,500, and contained also the common *money counts.* The defendants charged as *heirs and devisees*, pleaded *non assumpsit* and *riens per descent* or devise, and those charged as *heirs* only, pleaded *riens per descent.* To the plea of Genet and others, the plaintiffs replied that they had sufficient lands, tenements and hereditaments *by descent and devise* from Maria Osgood, wherewith they might and ought to have paid and satisfied, &c. The plea of the other children of Mrs. Osgood the plaintiffs confessed, and took judgment *quando acciderint.* The jury found that Walter Franklin Osgood, Edmund Charles Genet and Martha B. his wife, Samuel Osgood and Juliana his wife, and Susan K. Osgood, (impleaded as *heirs and devisees*,) had, and each of them had, divers lands, tenements and hereditaments, by descent and devise from the said Maria Osgood,

deceased, wherewith they could, and might, and ought to have satisfied and paid the said several sums of money in the said declaration of the said plaintiffs mentioned, and assessed the plaintiff's damages to the amount of $6917,50, on which verdict judgment was rendered against the defendants, to be levied of the lands, &c. which the said W. F. Osgood, &c. at the time of the exhibiting of the bill, had, as well by descent as devise, from the said Maria Osgood, deceased, and of the lands, &c. which should thereafter come to the hands of the others. The judgment was signed and docketed on the 17th January, 1818. The defendant produced an execution issued on the the judgment thus obtained, whereby the sheriff was commanded to levy the amount recovered of the lands, &c. which W. F. Osgood, Martha B. the wife of E. C. Genet, Juliana the wife of S. Osgood, and S. K. Osgood, and each of them, on the third Monday of October, 1815, (the day of the exhibiting the bill,) had, as well by descent as devise, from Maria Osgood, deceased; which execution was returned *satisfied*. The defendant next produced a deed from the sheriff of New-York to James Sterling, bearing date 16th March, 1818, conveying lot No. 11, Cherry street, by virtue of the said execution and a sale under it, and deduced a regular title from Sterling to himself. The property at the sheriff's sale sold for $7,200. The defendant proved that Sterling, after the execution of the deed, took immediate possession of the premises, and received the rents falling due on the 1st May, 1818, and he and his representatives continued to receive such rents until April, 1822, when the premises were conveyed to the defendant. He also proved, that on the 12th March, 1818, the day preceding the sale, Mr. Genet and Miss Susan K. Osgood agreed in writing to make a division of the surplus of the avails of the sale of lots No. 11 and No. 17, Cherry street, both of which lots it was expected would be sold to satisfy the judgment in favor of the Manhattan Company; and they authorized an agent to receive such surplus, who did receive the same, and on the 23d March, 1818, paid to Mr. Genet $3253, 57, and to Miss Osgood $1626,78, in full of their respective proportions. The defendant also gave in evidence the last will and testament of Maria Osgood, bearing date 27th July, 1814,

whereby the testatrix, after several specific legacies, gave the residue of her *estate, real and personal*, to her son Walter, and to her three daughters, Martha, Juliana and Susan, and appointed her son Walter, and her intended sons-in-law Samuel Osgood, and Edmund Charles Genet, executors of her last will and testament.

Next the defendant offered to prove that on the trial of the action of the Manhattan company against W. F. Osgood, E. C. Genet and others, under the issue of *riens per descent* or devise the deed from Maria Osgood to Martha Brandon Osgood was given in evidence on the part of Genet and wife; that the distinct question before the jury was whether that conveyance was or was not fraudulent and void as against the creditors of Maria Osgood, and especially as against the plaintiffs in that cause, and whether the said lot No. 11 was or was not assets by descent or devise in the hands of the defendants, or some of them, parties to that issue; that evidence was thereupon given, touching the same before the justice of the supreme court who presided, and before the jury, as well on the part of the plaintiffs as of Genet and wife and the other defendants, which occupied several days; that the plaintiffs contended that the lot No. 11, Cherry street, was assets by descent or devise in the hands of the defendants, parties to said issue in that suit, or some of them, and the defendants contended that the same was not such assets; that the presiding judge gave a clear and decided charge to the jury, that the conveyance of lot No. 11, Cherry street, was fraudulent and void as against the plaintiffs in that suit, and that the lot No. 11, Cherry street, was assets of the said Maria Osgood, deceased, in the hands of the said Edmund C. Genet and Martha B. his wife, and the other defendants, parties to that issue; that the jury found a verdict for the plaintiffs in that suit, and that the question whether the lot No. 11, Cherry street, was or was not assets as aforesaid, was distinctly submitted by the counsel for both parties, on the trial of the said issue of *riens per descent* or devise, and by the judge to the jury, and passed upon by the jury; and that both the judge and the jury were against the defendants, parties to that issue, and decided the said question against them: that

exceptions were taken to the charge and opinion of the judge, a case made and argued before the supreme court, who confirmed the verdict, and gave judgment for the plaintiffs ; and that the question in that suit is the same question involved in this suit. The plaintiffs objected to the evidence thus offered to be given, and the circuit judge excluded it as incompetent and improper.

The defendant also offered to prove that Maria Osgood, at the time of the conveyance to her daughter Martha, was, and continued from thence until and at the time of her death, to be *indebted* to divers creditors, and among others, to the Manhattan Company, her creditors, for the demand upon which the said judgment was obtained, in an amount equal to *double the value* of all her property. Whereupon the counsel for the plaintiff objected that unless the defendant meant to prove and insist that Maria Osgood in *giving*, and her daughter Martha in *receiving* the deed, meant thereby to defraud the creditors of the said Maria Osgood, in which case the plaintiff's counsel did not object to the evidence, the same was inadmissible ; for that the said Edmund C. Genet, by his subsequent marriage with the said Martha, became a *bona fide* purchaser for a valuable consideration of the premises conveyed, and that such marriage set up and made good and unavoidable the conveyance from Maria Osgood to her daughter, and the estate thereby conveyed. The circuit judge decided that the evidence thus offered was irrelevant, and ought not to be admitted, unless the defendant could further shew that Maria Osgood, at the time of executing the conveyance to her daughter, had an actual intent thereby to defraud her creditors, or that Genet, at the time of his marriage, knew of the indebtedness offered to be proved. The defendant's counsel not offering such further evidence, the judge excluded the evidence offered to be given.

The defendant then offered to prove that Genet was one of the acting executors of the last will of Maria Osgood, and acquainted with the fact that she was indebted in an amount equal to double the value of all her property at or shortly after the time of the death of the said Maria Osgood, to wit, in Oc-

tober, 1814, and before the commencement of the action by the Manhattan Company; that on the trial of that action on the issue of *riens per descent* or devise, evidence of such indebtedness was given, and Genet and wife appeared by counsel, and contested the same; that the court and jury on the trial of that issue held the conveyance from Maria Osgood to Martha Brandon Osgood to be fraudulent and void as against the plaintiffs in that action, creditors of Maria Osgood, and the jury accordingly gave their verdict for the plaintiffs in that action on the said issue; that exceptions were taken to the opinion of the judge before whom that issue was tried, a case made, and argument had before the supreme court, who affirmed the verdict, and gave judgment thereon for the plaintiffs; upon which judgment the execution already in evidence was issued, and the sale of lot No. 11, Cherry street, was made by the sheriff of New-York. Which evidence thus offered to be given was objected to by the plaintiff's counsel, and overruled by the circuit judge.

The evidence on both sides being closed, the circuit judge charged the jury that if they found the allegations made and insisted upon by the plaintiff's counsel satisfactorily proved, they would find a verdict for the plaintiff; if otherwise, for the defendant. And the judge further instructed the jury that the receipt of the surplus of the avails of the sale formed no bar to the plaintiff's right of recovery. The jury found a verdict for the plaintiff. The defendant having excepted to the various decisions made by the circuit judge, tendered a bill of exceptions, and moved the supreme court for a new trial, who, instead of granting the same, gave judgment for the plaintiff. Whereupon the defendant sued out a writ of error.

The cause was argued in the supreme court by

*B. F. Butler* and *G. C. Bronson*, (Attorney-General,) for the defendant Wood.

*S. P. Staples*, for the plaintiff.

The following opinion was delivered in the supreme court on denying the motion for a new trial:

*By the Court*, SAVAGE. Ch. J.   Before I proceed to an examination of the questions presented by this bill of exceptions, it will be proper to see what questions were decided in the case of *The Manhattan Company* v. *Osgood and others*, 15 Johns. R. 162.   From the record produced on the trial of this cause, it only appears that the jury found the issue of *riens per descent* against the defendants ; from the report of the case in Johnson, it is manifet sthat the court and jury proceeded upon the ground that the deeds were void because they were voluntary, and the grantor was indebted at the time of the conveyance.   The point brought before the court was the propriety of the evidence received at the circuit to prove such indebtedness.   That evidence was a *petition from* the executors, presented to the surrogate, stating that the personal estate of Mrs. Osgood was insufficient to pay her debts.   Mr. Justice Van Ness, at the circuit, charged the jury that the deeds from Mrs. Osgood to her children were upon their face voluntary ; that she was insolvent at the time ; that they were void as against creditors, and the property conveyed should be deemed assets.   When the case came before the court on a motion for a new trial, the point principally discussed was the admissibility of the petition of the executors as evidence.   That point was decided as the judge at the circuit had decided it, and on that ground a new trial was denied ; and I may add, on that point the judgment of the supreme court was reversed in the court for the correction of errors. 3 Cowen, 620.   In all the discussions of that case it seems to have been understood as the settled law, that a voluntary conveyance executed by a person indebted at the time was *ipso facto* inoperative and void as against creditors.   So the law was stated to the jury, and Mr. Justice Yates, in delivering the opinion of the whole court, says, it is well settled that if a party executes a voluntary conveyance, indebtedness at the time is evidence of fraud ; and when such indebtedness is to the extent shewn in this case, it is sufficient to render the conveyance inoperative and void as to creditors. The law must have been so understood in the court for the

correction of errors, when that cause was decided, otherwise the contrary doctrine would have been assumed, for no question of fraud was submitted to the jury, but only the question of insolvency.

When this cause was first tried, the defendants introduced the record of the recovery in the supreme court, together with the execution and sheriff's deed; and the plaintiff produced the remittitur from the court of errors, reversing that judgment. On that trial the defendants' counsel insisted that the lessors of the plaintiff were concluded by the verdict in the former cause, and the judge decided that as it did not appear by the bill of exceptions attached to the remittitur, that the same subject matter now in issue was in issue and tried and decided in that suit, and that the validity of the conveyance from Mrs. Osgood was then in issue, it was competent for the defendant to give parol evidence of that fact. The evidence was received, and the decision was excepted to. It was then proved that the distinct question before the jury on the trial of that issue was whether the conveyances to Martha B. and Susan K. Osgood were or were not fraudulent and void, as against creditors, and especially the plaintiffs in that suit; that evidence was given on both sides touching that matter, and the contest was whether the lots were assets; and that the jury after a very decided charge from the judge, found a verdict for the plaintiffs. After hearing this testimony the circuit judge charged the jury that if they found the facts as to the former trial as they had been proved, then the verdict in the former suit and the judgment thereon were conclusive upon the lessors in this cause, and a bar to their recovery. The jury accordingly found for the defendant. That verdict was set aside in August term, 1829, 3 Wendell, 27, for the misdirection of the judge, " in deciding that the judgment and proceedings in the cause of the President and Directors of the Manhattan Company against the heirs and devisees of Mrs. Osgood were conclusive upon the rights of the plaintiff in this suit, and that there ought therefore to be a new trial." 3 Wendell, 42.

We are now asked to set aside the last verdict, on the ground (among others) that the judge erred in excluding the evidence of the former trial. As this decision was in accordance with

VOL. VIII.        3

ALBANY,
Dec. 1831.

Wood
v.
Jackson

the decision of this court, the error, if any, was committed by this court, and not by the circuit judge. In delivering the opinion of the court, Mr. Justice Marcy assumed as the basis of this argument, what has often been recognized by this court, the rule laid down by De Grey, chief justice, in the case of the Dutchess of Kingston, that " the judgment of a court of concurrent jurisdiction directly on the point is, as a plea, a bar, and as evidence conclusive between the same parties upon the same matter directly in question in another court;" " but a judgment is no evidence of a matter which comes collaterally in question merely, whether the court be of concurrent or exclusive jurisdiction ; nor is it evidence of a matter incidentally cognizable, nor of a matter to be inferred by argument from the judgment." It is conceded in the opinion referred to, that a judgment in the same court is equally conclusive with the judgment of a court of concurrent jurisdiction. It is then asserted that the party is concluded only as to those facts which appear from the record to have been in issue, and several cases are cited to support that proposition. The conclusion therefore is, that the record offered in this case was not proper evidence, because it does not appear from the record itself that the fact now in issue was in issue in the former suit, and directly decided therein. It was further held that the record should have been excluded, because in that case the title of the lessors to the premises now in dispute came in question collaterally, and that what the determination of the jury was upon that title, is matter of inference from the judgment ; that it is not the matter adjudicated in that cause which is sought to be introduced as authority here, but one of the alleged grounds of that adjudication, and that a particular ground of adjudication can never be inferred and relied upon as conclusive. And it was further held, that a record which might be pleaded as an estoppel, if left at large on the pleadings was not conclusive, but the jury were at liberty to find against the former verdict, which is considered an exception to the general rule laid down in the Dutchess of Kingston's case.

It is conceded that there are clashing decisions on these questions, and it may not be improper to refer to some of them.

The case of *Trevivan* v. *Lawrence*, 1 Salk. 276, 2 L. Raym. 1036, has been referred to, to prove that after a fact has once been judicially tried and ascertained, a party to the proceedings is estopped from denying its truth. That proposition has not been controverted; the difficulty arises as to the manner of proof of the former trial. The case referred to was an ejectment, in which the lessor claimed title under a judgment upon *scire facias* and *elegit* upon which the lands in question had been extended, and the lessor put in possession. The defence was that in the proceedings upon the *scire facias*, there was a variance in describing the original judgment as of *Hilary* term, when in truth it was of *Michaelmas*, and the court held that the defendant was estopped by the judgment on *scire facias*, to say there was no judgment of *Hilary* term, because that matter had been tried against them, and the defendants were concluded to falsify the judgment in the point tried. In that case, it will be observed, the judgment was set forth in the pleadings, and the form of the judgment required an adjudication that there was a judgment of Hilary term; and the object of the defence was to falsify the record, which was clearly inadmissible.

The case of *Seldon* v. *Tutop*, 6 T. R. 607, was an action of assumpsit on a note and for goods sold. On the execution of a writ of enquiry, the plaintiff proved the note only, and took judgment for the amount. A second action was brought for the goods, and the plaintiff recovered. The court held that the former verdict was no bar, as it was clearly proved that the plaintiff had not recovered for the goods in the first action.

In *Hitchin* v. *Campbell*, 2 Bl. 827, 3 Wils. 304, it was decided that one personal action going to judgment is a bar to another action for the same cause. The plaintiffs, as assignees of a bankrupt, had brought trover for certain goods which had been taken and sold on an execution against the bankrupt in favor of the defendant; and having failed in the action of trover, brought assumpsit to recover the money for which the goods had been sold, and the court held that they could not recover. The first action determined the goods not to be the assignees', and they were not permitted to try whether the money produced by those goods were theirs. The defendant

ALBANY,
Dec. 1831.

Wood
v,
Jackson.

pleaded two pleas : 1. Non-assumpsit ; 2. A former recovery for the same promise as set forth in the present declaration ; and under this issue proof was received, and a special case stated, for the opinion of the court ; and it.was said that the plaintiffs, by bringing trover, had made their election, and could not bring another action for the same cause ; and what is meant by the same cause of action, is where the same evidence will support both actions, although the actions may happen to be grounded on different writs. The same doctrine is recognized in Cro. J. 35.

The case of *Outram* v. *Morewood*, 3 East, 346, has been referred to on both sides. The plaintiff declared against the defendants in trespass, for entering the plaintiff's close and carrying away coals. The defendants plead title in the defendant Ellen, the wife of the other defendant, and set out the title from Sir John Zouch. The plaintiff replies, and relies by way of estoppel upon a former verdict obtained by him in an action of trespass brought by him against the defendant Ellen, she being then sole, in which he declared for trespass on the same premises, to which she pleaded the same title, upon which an issue was joined, and found for the plaintiff; and the question was whether the defendants, the husband and wife, were estopped by the former verdict and judgment. Lord Ellenborough held, "that a recovery in any one suit upon issue joined on matter of title, is equally conclusive upon the subject matter of such title ; and that a finding upon title in trespass not only operates as a bar to the future recovery of damages for a trespass founded on the same injury, but also operates by way of estoppel, to any action for an injury to the same supposed right of possession." And " it is not the recovery, but the matter alleged by the party, and upon which the recovery proceeds, which creates the estoppel. The recovery, of itself, in an action of trespass, is only a bar to the future recovery of damages for the same injury ; but the estoppel precludes the parties and privies from contending to the contrary of that point, or matter of fact, which having been once distinctly put in issue by them, or by those to whom they are privy in estate or law, has been on such issue joined, solemnly found against them." He then refers to some authorities

ALBANY,
Dec. 1831.

Wood
v.
Jackson,

which had been cited to prove the contrary doctrine, and remarks of some of them, that they do not touch the question then before him, which was the effect of a precise allegation made in pleading on record, and tried and found between the parties. In his remarks upon the case of *Bassett* v. *Bennett*, p. 364, he intimates that the same matter, which if properly pleaded would be an estoppel, would not be conclusive, if only offered in evidence ; it would be material evidence, but not conclusive, as an estoppel would be. In his remarks upon *Evelyn* v. *Haynes*, p. 365, he says, a former recovery for obstructing a water course, could only be conclusive upon the right, if it could have been used, and even actually used in pleading, by way of estoppel, but which it could not be in that case, because no issue was taken in the first action upon any precise point, which is necessary to constitute an estoppel in the second action, and because it was not pleaded as such, but only offered in evidence under the general issue. In this position Lord Ellenborough is opposed to the doctrine of Chief Justice De Grey, in the Dutchess of Kingston's case. The case, therefore of *Outram. v. Morewood* proves the conclusiveness of a verdict found on any precise point, once put in issue between the same parties, or their privies ; but contains an opinion that it is not conclusive when offered in evidence. Such was the decision of the same court in *Vooght* v. *Winch*, 2 *Barn. & Ald.* 662. Abbott, chief justice, says that the verdict and judgment obtained for the defendant in a former action were not conclusive evidence upon the plea of not guilty, though it would have been pleaded by way of estoppel ; that the defendant by so pleading elected again to submit his case to a jury. *Bailey*, justice, concurs, and considers this distinction taken in the case of *Outram* v. *Morewood*, and what was said by Lord Mansfield, 3 Bur. 1853, that the verdict would be a bar when given in evidence, was denied. The rule as here laid down seems to be established as the present rule of the English courts.

In the supreme court of the United States it has been decided that a record of a former suit between the same parties in which judgment was rendered for the defendant, with parol evidence that the former suit was for the same cause of

action as the present, is properly admissible under the general issue. *Young* v. *Black*, 7 Cranch, 565.

In Massachusetts, the rule seems to be, that where in the course of the pleadings the party who relies on matter of estoppel has no opportunity to plead it, he may shew it in evidence, and it will in general have the same effect as if pleaded; but where the matter to which the estoppel applies is distinctly averred or denied by one party, and the other instead of pleading the estoppel, as he may in that case, takes issue on the fact, he waives the estoppel, and the jury are at liberty to find the truth. 14 Mass. R. 243. 17 id. 368.

In Connecticut it has been decided, that to make a record in a former suit conclusive evidence on any point, it should appear from the record that such point was in issue, 4 Day, 281, and when admitted is conclusive between the parties as to the facts decided in it, except when offered in actions of a higher nature, or which relate to a common right; but it is conclusive, so far only, and in respect to such facts as were necessarily and directly decided. 4 Day, 432. See also, 4 Cowen, 280, as establishing that parol evidence may be given to shew what the record refers to.

In this state several cases are found where the question now before the court has been considered. In *Manny* v. *Harris*, 2 Johns. R. 29, evidence was given on the trial of a record between the same parties of a former suit, and parol evidence was given that the cause of action in the latter suit had been allowed to the plaintiff in the former suit. Spencer, justice, in giving the opinion of the court, approved of and adopted the language of Lord Kenyon, 1 Esp. 43, that to make a record evidence to conclude any matter, it should appear that the matter was in issue, which should appear from the record itself, nor should evidence be admitted that under such a record any particular matter came in issue; and it was added that it did not appear from the record that the former issue in any shape comprehended this cause of action, and consequently the proof admitted was improper.

In the case of *Brockway* v. *Kinney*, 2 Johns. 210, the cause was tried before a justice and jury, and evidence of a former trial was given by consent; and the court say that the verdict

must be considered as conclusive between the same parties in regard to the same matter, otherwise it would in effect be permitting one jury to review the decision of another.

*Snider and Van Vechten* v. *Croy,* 2 Johns. R. 227, was an action of trespass for an injury done to a mare. The defendant pleaded a former recovery for the same trespass. The plaintiff replied specially, shewing that the former recovery was for a different cause of action. To this replication the defendant demurred. Kent, Ch. J., in giving the opinion of the court, said : " A recovery in a former action, apparently for the same cause, is only *prima facie* evidence that the subsequent demand has been tried, but it is not conclusive ;" and he cited *Seddon* v. *Tutop,* 6 T. R. 207. This case is denied to be law by Mr. Justice Gibson, of the supreme court of Pennsylvania, 6 Serg. & Rawle, 60, on the ground that in the former suit there was but one count in the declaration, including the charge of the same trespass for which the second suit was brought.

In *Philips* v. *Berick,* 16 Johns. R. 136, it was decided that the record of a former recovery, apparently for the same cause of action as that which is the foundation of a subsequent suit, is *prima facie* evidence only that the demand had been once tried, which may be repelled. So too in *Mayhee* v. *Avery,* 18 Johns. R. 352, in an action of slander, where the defendant produced a record of conviction, shewing the truth of the words for which the action was brought, it was held that the record was *prima facie* evidence only, but not conclusive, and that the plaintiff was at liberty to controvert the fact anew.

In *Garden* v. *Bucklin,* 3 Cowen, 125, it was held that a judgment in the marine court, being a court of concurrent jurisdiction, was conclusive upon the parties, and that parol proof was proper to shew the ground upon which the verdict was founded. In that case two notes had been given upon the sale of a vessel; one of the notes had been prosecuted in the marine court of the city of New-York; the defendant pleaded the general issue, and gave notice of a total failure of consideration, on the ground of fraud in the sale of the vessel, and on that ground succeeded in his defence. When the second note was prosecuted, the defendant offered in evidence the record in the former suit ; it was admitted, with other evi-

dence in support of the defence, which was fraud in the sale of the vessel, but it was not received as a bar to a recovery. This court held that the record, with proof that fraud in the transaction was the ground upon which the verdict was founded, were conclusive against the plaintiff. It was objected that the record was too general, but it was answered that the record shewed that it was competent for the defendant to prove the fraud of the plaintiff, and the counsel for the plaintiff in error insisted that the notice was equivalent to a special plea setting forth the precise ground of fraud; and this court said, "The jury must have passed on the fraud; it was directly in question;" and that whether it was proved or not, must depend on evidence extrinsic the record. The same principle has also been decided in the case of *Burt* v. *Steenbergh*, 4 Cowen, 659. That was an action of trespass *quare clausum fregit*. The defendant claimed the premises as his own. The plaintiff offered a record of a recovery in a former suit, for a trespass upon the same premises in which the defendant had set up the same title, and in which the plaintiff had recovered; this was objected to, but received; and this court sustained the decision. It was there said that "the decision of the judge, that the former recovery and the evidence offered by the plaintiff were conclusive evidence of the plaintiff's title, must be understood as having been made after the defendant had disclosed the defence and title on which he relied, and as determining nothing more than that in relation to that title, the recovery and evidence were conclusive; but that the defendant might have shewn, if he could, that he had acquired title since the former trial, or any title other than that which had been passed upon in the former trial."

From this brief review of some of the leading cases on this subject, it is manifest that they do not all agree—some holding that the former trial is equally conclusive, whether pleaded by way of estoppel or given in evidence on the trial, while others assert the doctrine that, though conclusive by way of estoppel, it is only material testimony when given in evidence on the trial, and may be rebutted. Some decide that the record itself must constitute the only evidence, while others maintain that parol evidence may be produced to shew the ground of the former decision, and to explain, but not contra-

dict the record. The decisions in this court have not been uniform, nor is it perfectly clear where the weight of author- ity or of argument lies. As the very point has been decided in this court in this cause, I forbear entering more at large up- on the question, conceiving that we are bound by the former decision.

The second point urged by the defendant's counsel is, that the evidence offered on the part of the defendant for the pur- pose of avoiding the conveyance from Mrs. Osgood, ought to have been received, and that the judge erred in requiring further proof of actual intent to defraud, or that Genet knew at the time of his marriage, of Mrs. Osgood's insolvency. When the cause of *The Manhattan Company* v. *Osgood*, 15 Johns. R. 162, was decided, the law was well settled, that if a party executes a voluntary conveyance, indebtedness at the time was evi- dence of fraud ; and without shewing any thing more, the law adjudged the conveyances void, and conclusively so as against creditors. We subsequently understood the rule to be, that indebtedness in the grantor of a voluntary conveyance was *prima facie* evidence of fraud, but not conclusive even as against creditors : that the question of fraud or not must be submitted to a jury, who must pass upon it. 8 Cowen, 434, 5. 4 Wendell, 303. By the revised statutes, a conveyance shall not be adjudged fraudulent as against creditors or purchasers, sole- ly on the ground that it was not founded on a valuable consid- eration. 2 R. S. 137, § 4. The judge was right in requiring further proof of fraudulent intent, Genet being a *bona fide* pur- chaser for valuable consideration.

The only remaining inquiry on this part of the case is, whe- ther the judge erred in receiving the evidence of Mr. Fon- taine. This testimony shews that the conveyance of the property in question was one of the inducements to the mar- riage. In *Verplank* v. *Sterry*, 12 Johns. R. 552, it was laid down by the late chief justice as an undeniable proposition, that a deed voidable may be rendered valid and effectual by matter *ex post facto*. If the grantee in a voluntary convey- ance convey to a *bona fide* purchaser, such purchaser has an indefeasable title. So, if the conveyance to Martha B. Os- good was an inducement to the marriage with Mr. Genet, he

ALBANY,
Dec. 1831.

Wood,
v.
Jackson,

has a good title, though the title of his wife before the marriage might have been avoided by the creditors of Mrs. Osgood. So says Chief Justice Spencer: "If a voluntary grantee gain credit by the conveyance, and a person is induced to marry her on account of such provision, the deed, even if voidable as to purchasers, will, on the marriage being solemnized, no longer remain voluntary as it was in its creation, but will be considered as made upon valuable consideration." The same principle had before been recognized by the late Chancellor Kent in the same case. 1 Johns. Ch. R. 261. The principle there settled seems to me to determine this point in favor of the validity of the title of Mr. Genet, acquired by his marriage with Martha B. Osgood. If the deed from Mrs. Osgood to her daughter was voluntary; if Mrs. Osgood was indebted at the time, so that the deed was liable to be avoided by her creditors while in the hands of her daughter, the grantee; still, the marriage of Mr. Genet having been induced by the conveyance, he thereby acquired a title not liable to be defeated, either by the prior creditors or subsequent purchasers for valuable consideration.

It is further contended by the defendant that the acquiescence of the lessors in the former decision, and the receipt of the excess of the purchase money by Mrs. Genet, constituted a good bar to the plaintiff's right of recovery. It was decided in *Storrs* v. *Barker*, 6 Johns. Ch. R. 166, that a person having the legal title, who acquiesces in the sale of the land by another claiming or having the title to it, is estopped from afterwards asserting his title against a purchaser; especially if he has advised and encouraged the parties to such sale to deal with each other. The case to which that principle was applied, was the case of a conveyance executed free from restraint of any kind, and to such a case was the remark of Lord Mansfield applied, which is reported by Mr. Justice Lawrence, 6 T. R. 556, that he would not suffer a man to recover at law who had stood by and seen the defendant build upon his land. This Chancellor Kent thought questionable in a court of law, but it may be conceded without giving up the right of the lessors in this case to recover. The acquiescence in this case was not voluntary, but compulsory. The supreme court had rendered a judg-

tment, by which the parties were at the time concluded. Had they refused to receive the surplus, such refusal would have been of no avail; the validity of the sale of their property would not have been affected by it; the only effect would have been, that they would have been deprived of the whole of their property instead of a part. Neither is there the same injustice in this case as in the case referred to. Should the lessors succeed in recovering the premises claimed by them, the *defendant* will have a remedy for the purchase money; and as to the money which was received by Mr. Genet, should that be retained, the law affords a remedy.

I am therefore of opinion, on the whole case, that a new trial be denied.

The cause in this court was argued by

*B. F. Butler* and *G. C. Bronson*, (Attorney-General,) for the plaintiff in error, and by

*D. B. Ogden*, for the defendant in error.

Points insisted on for the plaintiff in error:

I. The former recovery was of the same force and effect as *matter of evidence* under the general issue, as it would have been if *pleaded*: 1. Because in the action of ejectment, all matters of defence may be given in evidence under that issue; and 2. Because the defendant below had no opportunity of pleading the former recovery. According to the law of the action, he could only plead the general issue.

II. The title of the lessors of the plaintiff, (Mr. and Mrs. Genet,) was tried, and adjudged against them in the former action; and they were concluded from again setting it up, as against the same parties, or those claiming under them. 1. Their title to *some* lands was necessarily involved in the issue joined and the judgment rendered in the former suit. The verdict and judgment that they held lands as heirs and devisees of Mrs. Osgood, and subject to the payment of her debts, necessarily adjudicated the invalidity of the title which they

then set up, and have in this action again asserted. All that remained to make that recovery a perfect bar, was to shew that the particular lands referred to in the former suit were the same as those in question in this suit—No. 11, Cherry street. Evidence of that fact was offered, and improperly rejected by the circuit judge. 2. If the issue joined in the former action did not necessarily involve the title of the lessors of the plaintiff, yet it was broad enough to embrace or include the title, so that it might properly come in question on the trial : And where the issue is such that the title may properly come in question, it may be shown that it did in fact come in question, and was passed upon on the trial.

III. Whether the matter tried in the former suit be called *title, or the manner in which the lands were holden,* or by any other name, the record was at all events conclusive upon the matter then in issue and directly adjudicated. 1. It appears by the record, that *the very point* of the issue in the former suit, and the matter *directly* adjudicated, was, that Mrs. Genet and others *held lands by descent and devise from Mrs. Osgood, and subject to the payment of her debts.* That matter they were not at liberty again to litigate with the plaintiffs in the former judgment, or those claiming under them. 2. With that fact established, the title of the defendant below was perfect, with the single exception that the record only proved that *some* lands came in question on the former trial, and concerning which it was adjudged that Mrs. Genet and others held them by descent and devise, without specifying or showing *what particular lot, piece or parcel* of land came so in question—whether *No. 11 Cherry street,* or some other lands. 3. The *particular thing* or *subject matter* upon which an adjudication is had, is seldom *described* in the record with such *infallible certainty* that evidence *independent of the record* will not be necessary to *identify it.* Such evidence does not *contradict,* but is in *accordance* with the record ; and without it, a former recovery can never be a bar to a second litigation of the same question. 4. The evidence offered in this case to *identify* the particular lands which came in question on the former trial, and to which the record refers, *No. 11, Cherry street,* was improperly overruled by the

circuit judge.   5. There is nothing in the bill of exceptions to induce the belief that the defendant could not have made out the fact which he offered to prove ; but whether he could prove that fact or not, will be ascertained when an opportunity to do so is afforded him in the proper place : it is not now a proper subject of enquiry.

IV. The defendant below, in connection with the record of the former recovery, made out a perfect title to the premises in question ; and the judge erred in charging the jury that the plaintiff below was entitled to recover.   1. Every thing necessary to the validity of the defendant's title was shown by the former judgment, and other documentary evidence, except the single fact that the premises in question, (No. 11, Cherry street,) were the lands referred to in the judgment.   2. That the premises in question were a part of the lands referred to in the judgment, and which Mrs. Genet and others held by descent and devise from Mrs. Osgood, and subject to the payment of her debts, was proved by the acknowledgment of the parties at the time ; and their subsequent acquiescence in the sale of those lands under the judgment.

V. If the evidence which was received without objection in relation to the former recovery, was not *conclusive*, or if the evidence on the same subject which was offered and rejected, would not have been *conclusive*, still it was *proper evidence for the consideration of a jury*, and should not have been disregarded and rejected.

VI. The evidence offered on the part of the defendant below, for the purpose of avoiding the conveyance from Mrs. Osgood to her daughter Martha B. Osgood, ought to have been received ; and the judge erred in requiring further proof of an actual intent to defraud on the part of Mrs. Osgood.   1. The facts offered to be proved, if not repelled, would have been conclusive evidence that the deed was fraudulent and void as against the creditors of Mrs. Osgood.   2. The facts offered to be proved, were at least presumptive evidence of fraud, and should have been received and submitted to the jury.

VII. The marriage of Mr. Genet, under the circumstances of this case, could not set up and make valid a deed so im-

peached.   1. The deed being fraudulent as against the creditors of Mrs. Osgood at the time of the gift, no subsequent act of the fraudulent grantee could validate the title in her hands, as against those creditors, whatever might be the case as to subsequent creditors, or bona fide purchasers from the grantor. 2. It was a mere deed of gift; not made upon, or in contemplation of, or with any reference to a marriage.   3. The consideration of "natural love and affection," stated in the deed, was of itself notice to Mr. Genet that the deed was voluntary and fraudulent as against the creditors of Mrs. Osgood, and sufficient to put him on inquiry as to the fact whether or not there were any such creditors.   4. It does not appear that Mrs. Genet gained credit by the conveyance, or that Mr. Genet was induced to marry her on that account.   What was proved on this subject, was at the most only evidence tending to establish the fact, and *proper to be submitted* to the jury; but the judge took upon himself to decide the question.

VIII. The acquiescence of the lessors of the plaintiff in the former decision and sale, and the receipt of the excess of the purchase money, constituted a good bar to the plaintiff's right of recovery.

Points insisted on for the defendant in error.

I. The record offered, was inadmissible to shew that the deed of Maria Osgood to her daughter Martha B. Osgood, was fraudulent and void, and had been so decided by a former court and jury, as the record standing alone contained no such evidence, and as it could not be helped out by parol testimony.

II. The evidence offered to the defendant below, to show that the deed from Maria Osgood to her daughter Martha B. Osgood was void, was irrelevant to the point to which it was offered and was properly rejected ; the deed not being actually fraudulent, but only voluntary, the marriage validated it.

III. The reception of the surplus money upon the back of the agreement made to guard as far as possible against a loss, and prevent any dispute between the owners of the premises by reason of the sale, had no effect to validate the title of the defendant below.

The following opinions were delivered:

ALBANY,
Dec. 1831.

Wood
v.
Jackson.

By the CHANCELLOR. As the judgment in the supreme court, under which the defendant claims, was not against the defendants in that suit personally, nor against any specific lot or property, but generally, against the lands and tenements which had come to them by descent or devise, if the deed of May, 1814, executed by Maria Osgood to Martha Brandon Osgood was valid as against the creditors of Mrs. Osgood at the time of her death, it is evident the defendant has no right to the lot, and it still belongs to Mrs. Genet. On the other hand, if that deed was void as against the creditors, the legal title passed under the sheriff's sale, and that title was not divested by the subsequent reversal of the judgment in this court. The merits of this case, therefore, depend entirely upon the fact of the validity or invalidity of that deed; because, if it was valid, it could not be either legal or equitable to take the property of Mrs. Genet to pay a debt due from her mother to the bank, as an endorser upon the notes of the brother.

The counsel for the defendant Wood insisted on the trial, that the evidence offered on his part was sufficient to show the deed of May, 1814, fraudulent in fact, if not in law; and even if it was not fraudulent, the lessors of the plaintiff were estopped from alleging its validity, in consequence of the verdict and judgment in the suit against the heirs and devisees of Mrs. Osgood. Before I proceed to examine these questions, it may be proper to notice the last point made by the counsel of Wood. It appears by the evidence that two lots, one belonging to Mrs. Genet, and the other to her sister, Susan K. Osgood, were advertised for sale by the sheriff; and that an arrangement was made between Genet and the sister, by which he received a portion of the surplus raised on the sale of both lots, and she received the residue. The parties to that arrrangement undoubtedly acted under the supposition that the supreme court had decided that their deeds were invalid, and that their lots must go to pay the debt to the bank, but neither of them did any act to encourage the purchasers to bid, or to deprive themselves of their legal rights, if the sale was unauthorized. Even

in a court of equity, the most that could be required of Genet would be that he should refund to the purchaser the surplus monies, if any remained, after deducting therefrom the rents and profits of the lot from that time to the present. Probably the rents and profits since 1818 would far exceed the surplus monies received from the sheriff. Again, Mrs. Genet was not a party to that transaction, and could not be deprived of her property by any act of her husband. And sitting here to review the decision of a court of law as to the legal title to this lot, I do not see how this question as to the surplus can affect the decision of this cause.

Previous to the decision of this court in *Seward* v. *Jackson,* 8 Cowen, 406, it was a very general opinion of the bar, founded upon high authority, that a deed of gift was absolutely void against creditors whose debts existed, or were founded upon contracts made previous to the date of the deed. See Atherly on Mar. Set. 212. Even since that decision, and under the provisions of the revised statutes on this subject, a purchaser under a judgment obtained on such previous debt or contract, would probably have a right to consider it prima facie fraudulent, so as to throw upon the claimant under the voluntary conveyance the burthen of proving that the situation of the grantor's property was such as to justify a belief that he had sufficient to pay his debts, independent of the land conveyed. It is probable from a reference to facts stated in the reports of the original suit in the supreme court and in the court for the correction of errors, that the judgment was obtained on the endorsement of the two notes mentioned in the special counts of the declaration, which were made subsequent to the conveyance; but the common counts were also contained in the declaration, and as the defendant in this suit offered to prove that the debt for which the recovery was had was contracted by Mrs. Osgood previous to the conveyance, we must upon this bill of exceptions take it as true that the recovery was not on those endorsements, but upon the money counts, and for a prior debt. It therefore becomes necessary to enquire what effect the subsequent marriage had upon the voluntary conveyance.

A voluntary conveyance may become valid by matter *ex post facto*, or it may acquire validity, so far as concerns the interests of those who rest their claims either upon marriage, or some other valuable consideration. Marriage is ranked with money, or money's worth, as a valuable consideration, and is not merely a good consideration, like that which springs from the implied obligation of a parent to provide for his children, or the affection the grantor may be supposed to feel for his relatives. 1 Atk. on Conv. 374. Wherever there is a voluntary conveyance which is not actually fraudulent in the hands of the grantee, if a subsequent marriage takes place, and the conveyance forms any inducement to the marriage, that is sufficient to render the conveyance valid, not only as against a subsequent purchaser, but also against the creditors of the grantor. *Ver Plank* v. *Sterry*, 12 Johns. R, 536. 1 Johns. Ch. R. S. C. 251. *Rodgers* v. *Langham*, 1 Siderf. 133. *Kirk* v. *Clark*, Prec. in Ch. 375. *East India Co.* v. *Clavell*, Gilb. Eq. R. 37. The testimony of Fontaine, which was properly admitted for this purpose, shows that the provision for the daughter formed an inducement on the part of Genet to marry in the then reduced state of his own means to support a family. Perhaps even that evidence was not necessary. There can be no doubt that Genet was aware of the provision made for the daughter, as the deed was on record before the marriage; and the court, probably, should presume that it formed an inducement to the marriage from his knowledge of the existence of the conveyance. *Brown* v. *Carter*, 5 Ves. 879. Atherly on Mar. Set. 239. It is not material to enquire whether the deed was not fraudulent on the part of the mother, on the ground that she was legally bound to know that her property would not be sufficient to pay all her debts, although it is probable she was afterwards rendered insolvent by the failure of her son, for whom she had endorsed to large amount, and who was indebted to her on other accounts to more than $10,000, as appears by the will. If that document, which was made after this conveyance to the daughter, and about the time of the marriage, furnishes any evidence of the mother's opinion as to her own solvency, she believed her property at

ALBANY, Dec. 1831.

Wood
v.
Jackson.

that time was sufficient to pay all her debts, and to leave a balance of several thousand dollars, which she gave in legacies to her several children. Whatever, however, may have been her opinion, there is not a particle of proof to induce a belief that either of the parties to the marriage knew that she was indebted to any extent whatever; and if Mr. and Mrs. Genet had no knowledge of any indebtedness which might defeat the conveyance, they should be protected as bona fide purchasers; for there cannot be much doubt that both of them entered into the matrimonial state, depending to a considerable extent upon this house and lot as a part of the means of supporting a family. Atherly indeed suggests, that if a conveyance on its face contains no consideration but that of natural love and affection, the subsequent marriage will probably not render it valid as against creditors; but he admits he has not been able to find any adjudged case to support that position, and he founds his opinion solely upon the hypothesis that a voluntary conveyance is conclusive evidence of fraud, as against creditors. It having been decided by this court, in *Seward* v. *Jackson*, that he is wrong as to the last position, the other point falls with it. By an examination of the case of the *Manhattan Co.* v. *Osgood and others*, 15 Johns. R. 167, 3 Cowen's R. 612, it will be seen that this fact of the marriage of Genet after the date of the deed, and before the death of Mrs. Osgood, was not shewn on the trial of that cause. The decision of the supreme court in that case did not therefore embrace the question as now presented. From the examination I have given the case, I am satisfied Genet and wife had a valid title to the lot in Cherry street at the death of Mrs. Osgood, which was not liable to the payment of her debts. It therefore becomes necessary to enquire whether they have been deprived of their legal rights by the proceedings in the suit against the heirs and devisees, so as to be estopped from asserting their just claims to the property.

If the record of the trial and judgment in the suit of the Manhattan Company against the heirs and devisees of Mrs. Osgood estopped the lessors of the plaintiff from setting up the conveyance to Mrs. Genet as a valid deed, I have no hes-

ǎation in saying that it was conclusive upon the rights of the parties. There is a certain class of cases in which the party may avail himself of an estoppel, by pleading the same in bar to a suit, or in reply to allegations set out in a plea. In such cases, if he neglects to make the objection in that manner, and puts the facts directly in issue, without pleading the former verdict or decree as an estoppel, the jury may find according to the truth of the case, on the issue. *Vooght* v. *Winch,* 2 Barn. & Ald. R. 662. *Trevivan* v. *Lawrence,* 1 Salk. R. 276. But this principle is only applicable to those cases where special pleading is required; it does not extend to actions of assumpsit where an estoppel, as a former recovery or bar, is embraced within, and may be given in evidence under the general issue. *Young* v. *Black,* 7 Cranch's R. 565. Neither does it apply to cases where the plaintiff's title is by estoppel; or where the party relying upon the estoppel has had no opportunity to plead the same specially, as a bar. From these principles it necessarily follows that in ejectment, where special pleading is not allowed, the defendant, in support of his possession, may give in evidence any matter which would have operated as a bar, if pleaded by him by way of estoppel to a real action, brought for the recovery of the same premises, or to an action of trespass, brought to try the right of the same property. And the lessor of the plaintiff, on the other hand, may give in evidence any matter which might have been replied by him as an estoppel to a plea of title by the defendant in a real action, or in a suit for trespass.

I have found myself somewhat embarrassed in this case, from the peculiar manner in which the facts are presented on this bill of exceptions. We see from the record, that the only question to be tried between the Manhattan Company and the children of Mrs. Osgood, was whether any, and not what lands had come to them by descent or devise. By the report of that case in this court, 3 Cowen, 612, it appears that the testatrix was seized of real estate, besides the lots conveyed to her daughters, but which was encumbered by heavy mortgages. It also appeared on the former trial of the present suit, that there was other evidence on the trial of the suit against the

children of Mrs. Osgood, sufficient to sustain the verdict of the jury, although they may have been satified the deed to Mrs. Genet was not fraudulent. Indeed the evidence on the first trial of this case showed a very material difference in the situation of the two lots. As Susan was unmarried, the voluntary deed to her was prima facie void, as against previous creditors of her mother; but the deed to Mrs. Genet, by the subsequent marriage, was made valid. A verdict cannot be urged as an estoppel to the litigation of a fact which was not absolutely necessary to the finding of the verdict in the previous suit. See *The King* v. *The Inhabitants of Knaptoft*, 4 Dow & Ryl. 469. And the court will never go into an examination of the jurors in the former cause, to ascertain upon what grounds their verdict was pronounced. Neither will a verdict be considered as an estoppel, merely because the testimony in the first suit was sufficient to establish a particular fact. It also appeared on the former trial of this cause, that the judgment in the case of the *Manhattan Company* v. *Osgood and others*, had been reversed in the court for the correction of errors, and the verdict set aside. This was of itself a sufficient answer to the verdict, when urged by way of estoppel. *Mahoney* v. *Ashton*, 4 Harris & McHen. 246. *Richardson's Lessee* v. *Parsons*, 1 Harris & Johns. R. 253. Buller's N. P. 234. In this case the judgment did not operate upon the land; the verdict was a mere estoppel between the parties, and the moment the judgment was reversed and the verdict set aside, the estoppel was gone. A purchaser under a judgment is entitled to every benefit which the judgment creditor would have, had he been the purchaser. And notwithstanding the reversal of the judgment, the purchaser is entitled to the land, purchased while the judgment was in existence; but he is not entitled to the benefit of a collateral fact settled by the verdict, which verdict is afterwards set aside on account of its illegality. In this very case the evidence on which that verdict was founded was declared by this court to be illegal. I am therefore of opinion that the decision of the supreme court in this case, by which they set aside the first verdict and awarded a new trial, was correct.

But the counsel for the defendant, who were undoubtedly aware of these difficulties, have on this last trial carefully excluded the fact that the judgment had been reversed. They also offered to prove that the *only question* before the jury on the trial of the cause of *The Manhattan Company* v. *Osgood and others*, was as to the validity of the deed to Mrs. Genet. The supreme court passed upon the case under a supposition that it embraced the same questions which they had previously decided in favor of the lessors of the plaintiff. Although I agree with the opinion of Mr. Justice Marcy, that on the facts as presented to the court on the first trial there was no estoppel, yet from the shape in which the counsel who tried the cause have suffered it to come before this court, I do not see how we can avoid reversing the judgment, and sending it back for a new trial. We can only take judicial notice of the facts stated in this bill of exceptions, although we may be satisfied the facts will be otherwise when the cause is re-tried. I must therefore vote for a reversal of the judgment of the supreme court, so that a *venire de novo* may be awarded.

By Mr. Senator SEWARD. What would have been the legal effect of the former judgment, had the record thereof been received in evidence on the trial, with such proof *aliunde*, as would have indentified the question involved in the former issue with that which was tried in this cause ?—would it have been a *conclusive*, or merely a *prima facie* answer to the plaintiff's action ? The supreme court held when this cause was first before them, (3 Wendell, 40, the record having on the first trial been received in evidence) and re-affirmed when the cause came again before them, that the former judgment given in evidence under the general issue was not conclusive of the facts determined thereby; I cannot subscribe to this decision.

In regard to this as to almost all other questions not definitively settled, there is a *general rule*, a fundamental principle of law, and the conflicting adjudication in relation to it has grown out of the endeavor to apply such general rule to particular cases. The general rule in relation to the subject before us is thus stated by Lord Hardwicke ; " It is an established rule of law that a fact which has once been directly decided shall **not**

ALBANY,
Dec. 1831.

Wood
v.
Jackson.

ALBANY,
Dec. 1831.

Wood
v.
Jackson.

be again disputed between the same parties." Hugh Smith-
son's case cited in Buller's N. P. 228. " *Nemo debet bis vexari*
is the general rule," said Chief Justice Wilmot. *Kitchin* v.
*Campbell*, 3 Wils. 308. The same general rule is laid down
in our elementary books and is universally admitted. 1 Phil.
Ev. 242, 3. Norris' Peake, 63, 4. Lord Chief Justice De Grey,
in the Duchess of Kingston's case, 20 State Trials, 538, de-
livered, as the unanimous opinion of the judges, the following
answer to questions proposed by the house of lords : " The
judgment of a court of concurrent jurisdiction directly on the
point is as a plea, a bar, and as evidence conclusive between
the same parties upon the same matter directly in question in
another court ; but a judgment is no evidence of a matter
which comes collaterally in question merely, whether the court
be of concurrent or exclusive jurisdiction." This decision may
be regarded as an attempt by the judges to furnish a rule for
the practical application of the general rule *nemo debet bis vexari*.
And if the judges were correct, it must be admitted that the
application of the general rule in most cases would not be dif-
ficult. Unfortunately, however, it had long before and has
frequently since that decision been held that a former judg-
ment directly on the point in question *as evidence*, is not con-
clusive between the same parties upon the same matter direct-
ly in question in a subsequent suit, and that a judgment so
given in evidence is not conclusive, the supreme court in deliv-
ering their opinion in this case justly say may now be consid-
ered as the settled law in England ; so that the decision of
the judges in the Duchess of Kingston's case should have
been, that a judgment of a court, of concurrent jurisdiction
directly on the point is as a plea, a bar and as evidence *prima
facie* between the same parties, &c. Thus it will be seen that
the general rule of Lord Hardwicke is so far modified that it
is only when the judgment is pleaded that it is conclusive. I
have looked with much care through the cases cited by the
counsel as well as those cited by the court, to ascertain the
grounds of the modification I have mentioned. The case of
*Trevivan* v. *Lawrence*, 1 Salk. 276, occurred in the time of
Queen Anne. Thus early the distinction as to the effect of
a judgment when pleaded and when given in evidence was

asserted.  It was held, that if the party will not rely upon the estoppel when he may, but takes issue on the fact, the jury shall not be bound by the estoppel, for they are to find the truth of the fact which is against him.  In the case of *Outram* v. *Morewood*, 3 East, 364, Lord Ellenborough in commenting upon the case of *Evelyn* v. *Haynes*, says that a former recovery is not conclusive in a second action if given in evidence merely under the general issue, and in order to be an *estoppel* it must be pleaded as such with apt averments.  In the case of *Vooght* v. *Winch*, 2 Barn. & Ald. 668, Abbot Chief Justice says: " Upon the second point I am of opinion that the verdict and judgment obtained for the defendant in the former action was not conclusive evidence against the plaintiff upon the plea of not guilty.  It would indeed have been conclusive if pleaded in bar by way of *estoppel*.  In that case the plaintiff would not be allowed to discuss the case with the defendant and for the second time to disturb and vex him by the agitation of the same question.  But the defendant has pleaded not guilty, and has thereby elected to submit his case to a jury.  Now if the former verdict was proper to be received in evidence by the learned judge, its effects must be left to the jury.  If it were conclusive indeed, the learned judge ought to have immediately non-suited the plaintiff, or told the jury that they were bound in point of law to find a verdict for the defendant. It appears to me, however, that the party by not pleading the former judgment in bar, consents that the whole matter shall go to a jury, and leaves it open to them to inquire into the same upon evidence, and they are to give their verdict upon the whole evidence then submitted to the jury."  Bailey, justice, coincided with the chief justice, concurring as did the whole court in the reasons assigned for the judgment.  I have thus quoted at some length from two of the leading cases on the present question, for the purpose of ascertaining what are the grounds of the modification of the general rule so far as it applies to the effect of a former recovery when given in evidence under the general issue ; and it must be seen that the only reason assigned, is that the party by not pleading the former judgment as an *estoppel*, but leaving it at large upon the pleadings, waives it, or as Chief Justice Abbott says, *he consents* that

the jury shall reinvestigate the facts and find with or against the former verdict as they shall deem proper. The distinction is a sound one and the reasoning is satisfactory, because the general rule, "*nemo debet bis vexari*," is still preserved ; the party to be affected may insist upon its protection by pleading, or may waive it by leaving the matter at large upon the pleadings. If he will waive it when he might insist upon it, he cannot afterwards assert it.

But we come now to a new class of cases. In the action of ejectment the plea must be the general issue. The defendant must join in the consent rule, and by that consent rule he is required to plead the general issue only ; I speak of the action of ejectment as it was previous to the passing of the revised statutes. Now, indeed, it is enacted that the defendant shall plead the general issue only in ejectment. In the action of ejectment, therefore the defendant cannot plead that the plaintiff ought to be precluded from his action because a former judgment had passed against the plaintiff upon the validity of his pretended title. Here then is a case in which the defendant certainly cannot be said to waive the estoppel, or to neglect to plead it, or to consent that the jury shall pass upon the question—he must plead the general issue only, and under that issue the judgment must be conclusive, or else he has not the protection of the general rule. Thus it will be seen, that in such a case if the former judgment when given in evidence under the general issue is not conclusive, the defendant's rights are sacrificed by an exception to a general rule, although in his case the reason of the exception altogether fails. This difficulty was stated and surmounted by Judge Marcy, in delivering the opinion of the supreme court in this cause, when it was first before that court, in the following manner : " It is to be observed, (he says,) that in these cases, (the case of *Vooght* v. *Winch*, and others above cited,) the defendants might have pleaded what they offered as evidence, but in the present case the usual course of pleading did not allow the defendant to present by a plea what he offered in evidence as conclusive ; but it does not seem very reasonable that this circumstance should vary the effect of the evidence when offered under the general issue." Now with all deference, I think that the learned judge

ALBANY,
Dec. 1831.

Wood
v.
Jackson.

in declaring that it does not seem very reasonable that this circumstance should vary the effect of the evidence, begs the whole question, and I confess to me it seems much more reasonable that the effect of the evidence should be varied by the inability to plead the former recovery, than that the jury in a second action should be allowed to pass upon the same question once tried between the same parties, although the defendant could not plead the former judgment as an estoppel. In accordance with the opinion I have advanced, are the decisions in *Howard* v. *Mitchell*, 14 Mass. R. 243, and in 17 Mass. R. 367, although it must be conceded that those decisions rest upon no other authority than such as is found in the case of *Trevivan* v. *Lawrence*, and the other cases to which I have refered. Having declared my dissent to the decision of the supreme court upon this point, I leave it as one important to be judicially settled, but not absolutely necessary to the decision of this cause, and pass to the consideration of another question presented by the bill of exceptions.

"It was further held, (says the chief justice in delivering the opinion of the supreme court,) that the record should have been excluded, because in that case the title of the lessors to the premises now in dispute came in question collaterally, and that what the determination of the jury was upon that title is matter of inference from the judgment. And further, that it is not the matter adjudicated in that cause which is sought to be introduced as authority here, but one of the alleged grounds of adjudication, and that a particular ground of adjudication can never be inferred and relied upon as conclusive." It is most true, in the language of Chief Justice De Grey, in the Dutchess of Kingston's case, that a judgment is no evidence of a matter incidentally cognizable, nor of a matter to be inferred by argument, but it is much less clear that this principle excludes the record offered in this cause. What is the question in issue between the parties in this cause? Most certainly it is whether by virtue of the deed from Maria Osgood to Martha Brandon Osgood, the lessors of the plaintiff have a good title to the premises in dispute. The plaintiff below holds the affirmative of the issue, and produces that deed to establish his title, and if the deed be valid against the defendant below, the lessors

must recover. The defendant below resists the recovery by offering to prove that a former verdict has passed between the same parties upon the question of the validity of the deed, by which verdict the deed was found to be void. So far as concerns the question now under consideration, the propriety of receiving the record in evidence depends upon the manner in which the question which is determined arose on the former trial, that is to say, whether it was distinctly the subject matter of an issue or arose incidentally, or collatterally. By reference to the record it will appear that there were two distinct issues in the former action, both, so far as concerned the defendants in that suit, a part of whom are lessors in this suit, equally material : the first, whether Maria Osgood was indebted to the Manhattan company ; the second, whether the defendants were seized of any lands and tenements as heirs or devisees of Maria Osgood. That they were seized of the lands then in question was not disputed on the trial, and the evidence offered and rejected by the judge on the trial of this cause, was that the sole question tried under the issue of *riens per descent*, or devise in the former action, was whether the said premises were held by the then defendants as they alleged, by virtue of the deed from Maria Osgood, or whether they held as heirs or by devise from her. According to the terms of the evidence rejected, *the validity of the deed was the determining* point of that issue. If the deed was valid the judgment must have been in favor of the defendants; but being invalid the verdict was necessarily in favor of the plaintiffs. Can it be considered, then, that it was merely incidentally or collaterally before the jury ? To my mind it seems to have been affirmatively, directly and necessarily in question. But it is said by the supreme court that it is by inference, by way of argument only, that it can be ascertained what the determination of the jury was upon that title. The issue of *riens per descent* related to some lands ; those lands identified, another and equally important question remained, which was, whether the lands so identified were held by virtue of the deed from Maria Osgood, or by devise or descent from her. The jury found that the lands identified were held by devise and descent; they could not have so found if they deemed the deed from Maria

Osgood valid. The offer of the defendant in the court below was to prove that the invalidity of the deed was the sole ground of that adjudication. Where the form of the issue is such that except by inference from parol proof it cannot be ascertained what was the particular ground of adjudication, I submit it is too broad a proposition to say that that parol proof shall not be received, and yet it were useless to receive it if the inference may not be drawn from it. Now all the process of argument necessary to ascertain the point decided by that jury is this: some lands of the lessors of the plaintiff were held by them as heirs and devisees of Maria Osgood; lot number eleven, Cherry street, is those lands. But the lessors asserted that they held those lands by virtue of the deed from Maria Osgood. The jury found, nevertheless, that they held them as heirs and devisees; therefore the jury must have determined that the deed of Maria Osgood was void. This argument consists of nothing more than an explanation of the questions necessary to understand the issue and a statement of the verdict as applied to the questions; without the statement the verdict is unintelligible, and the statement being made, the verdict necessarily explains the determination of the jury. Having thus arrived at the conclusion, satisfactorily perhaps only to myself, that the record ought not to have been rejected on the ground that the facts which is established were collaterally in question in the former suit, or that the determination of the jury upon the fact can be ascertained by argument only, a further, a still more difficult and equally important question, touching the introduction of the record as evidence, remains to be considered.

The supreme court say, " the conclusion therefore is, that the record offered in this case was not proper evidence, because it does not appear from the record itself that the fact now in issue was in issue in the former suit, and directly decided therein." If this be a sound rule of evidence, it will be perceived at once that there are very many cases in which a party must be deprived of the protection of a former judgment, upon the same question directly in issue between the same parties, and very little examination would be necessary to convince us that the number of cases is very limited in which the

record, unaided by averments, would afford sufficient evidence to identify the fact which was in issue. Let us take the issue in the very case before us. The issue is whether the defendant below evicted James Jackson from the possession of the premises in question? The declaration avers that he did so evict, and the plea denies the allegation. The verdict must be that he did so evict, and the judgment for the recovery of a supposed term is consequent upon such a verdict. Now can the wit of man discover, by such a record alone, a single fact litigated between the parties? Nay, more : the declaration goes for three messuages and thirty rods of grounds, situate in the city of New-York, and the supreme court have rendered judgment for the possession of the lands and tenements demanded. Who, by the aid of this record alone, could locate the premises in question? But it may be said that the action of ejectment is one *sui generis;* it is granted. Let us take, then, the action of *trover*, in which there is required great certainty in identifying the property demanded, and yet even the record in that action, unaided by an averment of the identity of the property, would never be a bar to a subsequent action. In *assumpsit*, there are certain general counts under which evidence may be given with very great latitude, and it is left to a bill of particulars, which is not necessarily furnished, and when furnished, never becomes a part of the record, to specify the particular subject matter of the action. These illustrations are presented for the purpose of shewing that the rule laid down in the opinion of the supreme court cannot be correct without some qualification—some averments must go with the record. But what averments must go with the record? this is the question. Most assuredly, I answer, such averments as will distinguish and identify the subject matter of the former action. The principle thus far is decided in the case of *Young et al.* v. *Black*, 7 Cranch, 565 ; 4 Cowen, 280 ; *Gardner* v. *Buckbee*, 3 id. 125 ; it is sustained also by the precedents of pleas of former judgments as estoppels, and although the rule as broadly laid down by the supreme court is found frequently asserted, yet there is hardly a case in which it has been held that parol evidence was not admissible to explain to what the record related ; but the evidence so to be admitted

will vary according to the nature, or I might rather say the form of the issue contained in the record. If the issue be joined by special pleading, generally much less latitude of evidence will be required to explain the subject matter tried than will be necessary where the issue is general. But supposing it will be conceded that evidence may be given to identify and explain the subject matter to which the record refers, we do not yet obtain a rule for the admissibility of the evidence which may be offered for those purposes. The rule will still require some qualification, because too great latitude of evidence would be allowd by it. This qualification, I think, is found in the case of *Gardner* v. *Buckbee*, 3 Cowen, 125, and in *Burt* v. *Steenburgh*, 4 id. 659, and consists in this : that if the fact or grounds upon which the former judgment proceeded do not appear from the record itself, the issue contained in the record must be obviously such that the facts or grounds alleged might legitimately have been given in evidence under it; and when it is proved that such facts or grounds were so given in evidence, then that from the issue itself and the verdict it appear that those facts must have been necessarily and directly in question and determined, and that upon such grounds, and no other, must the verdict have been found.

From the view I have taken of this case, not unsupported by authorities, I deduce this principle : that a former judgment may be given in evidence, with such parol evidence as is necessary to shew the grounds upon which it proceeded, and that where such grounds from the form of the issue do not appear from the record itself, it is competent to prove the same, provided that the grounds alleged be such as might legitimately have been given in evidence under the issue, and such that when it is proved they were given in evidence, it appears by the verdict and judgment that they must have been directly and necessarily in question as the grounds of the verdict. Let us then try by this rule the evidence offered by the plaintiff in error in the court below on the trial of this cause. The lessors of the plaintiff on that trial made out their title to the premises in question by the deed from Maria Osgood to Martha B. Osgood, (now Genet) and upon that

Wood
v.
Jackson.

deed, and that alone, rested the title of the lessors. The de-
fendant (the plaintiff in error in this court) offered in evidence
the record of a judgment of the supreme court, in an action
wherein the President and Directors of the Manhatten Com-
pany were plaintiffs, and the lessors of the plaintiff were de-
fendants, and one of the issues was, whether they the les-
sors, with the other defendants were seised of certain lands as
heirs and devisees of Maria Osgood ; the verdict of the jury
upon that issue was, that they were so seised of certain lands
and tenements—thus far the record. The plaintiff in error
then offered to explain the record ; to prove that the lands in
question in that suit were the same with those to recover
which this suit was brought ; that on the former trial, the
defendants, now lessors, claimed title to those premises by
virtue of the deed from Maria Osgood, and upon no other
ground ; that to resist that claim, the plaintiffs alleged that
the deed was fraudulent and void as against them : that the
question of the validity or invalidity of that deed was the only
question submitted to the jury under that issue. Now, then,
it must be admitted that the grounds of that verdict do not ap-
pear upon the record itself, neither can it be denied that the
deed itself and the evidence introduced to prove it fraudulent
and void were legitimately admissible under that issue, and
being proved, it is equally certain that when this evidence,
and this evidence alone was submitted to the jury under that
issue, that it was necessarily and directly in question, and
must have been the grounds of the verdict. Had the verdict
been for the defendants in that suit, the deed must necessari-
ly have been deemed valid, but being for the plaintiffs, the
deed must have been found to be void. That the plaintiff in
error stands in the relation of privy to the President and Direc-
tors of the Manhattan Company, the plaintiffs in the former
action is a proposition too obvious, I think, to admit of argu-
ment.

I close these remarks as I commenced them, *nemo debet bis
vexari.* This question has been once tried between the parties
and the plaintiff in error ought not to be compelled to litigate
it anew. I can discover no qualification of the general rule
which ought to deprive him of its protection. I will not look

beyond the case to inquire whether it is probable that the plaintiff in error can on a new trial make the proof he has offered, or whether the judgment may not have been reversed, and what the effect of that reversal might be as regards the rights of the parties. Confining myself to the case as it appears before this court, I am of opinion that the judgment of the supreme court ought to be reversed.

*ALBANY,*
*Dec. 1831.*

The court being *unanimously* of the opinion that the judgment of the supreme court ought to be *reversed*, it was accordingly REVERSED.