Walworth, Chancellor.
The object of this suit is to recover from the defendant Manice the amount of three promissory notes which B. F. Phelps, either with or without the knowledge and concurrence of Manice, obtained from the plaintiff by fraud, and converted to the use of himself and Manice, by delivering them to M. Bullock in payment of two checks of the firm of Manice, Phelps & Co. These two checks were given about the middle of March, 1833, to Bullock, in the name of the firm of which Manice was a member, for moneys tiren lent and advanced upon the credit of those checks. And as Bullock knew that Manice was a member of that firm, and had no reason to suspect that the money was not advanced for his benefit as well as for the benefit of Phelps, and for the use of the firm, I have no doubt that Manice and Phelps were jointly liable to Bullock for the payment of the checks ; and that Bullock could have recovered the amount thereof against them, if the checks had not been paid with the plaintiffs’ notes, or in some other way. For where a third person lends money to one of the co-partners upon the check or notes of the firm, he has a right to presume it is for the use of the firm; unless there is something to create a suspicion that the money is not borrowed for the firm, and that the borrower is committing a fraud upon his co-partners. And where money is thus borrowed upon the note or check of the firm, the members of the firm, or those of them to whom the credit was given by the lender, are bound to show not only that the money was not applied to their use, but also that the lender had reason to believe it was not intended to be so applied at the time it was lent. (Band v. Gibson, 1 Camp. Rep. 185; Whitaker v. Brown, 16 Wend. R. 505.)
In this case the evidence fairly authorized the presumption that the money received of Bullock, upon the checks, was not applied to the use of the firm of Manice, Phelps & Co., and that Bullock at the time he lent the money did not know that Foote was a member of the firm, and therefore did not lend it upon his credit. But he did know that Manice was the partner of Phelps, and that they were doing business together under the name or firm subscribed to the checks. He therefore advanced the *120 money on their joint credit, without notice of any intended misapplication of the money by Phelps, and had a legal and equitable claim against both for the money lent. The right to recover in this case then does not depend upon the question whether Manice was an actual party to or was cognizant of the fraud by which Phelps, in the name of the firm, obtained the notes of the plaintiffs which were turned out in payment of those checks. For if he was .entirely ignorant of that fraud, the notes were converted to his as well as to Phelps’ use, by being applied in discharge of a debt contracted in the name of the firm for the payment of which he was jointly liable with Phelps.
The copartnership could not acquire any property in these notes, which were fraudulently obtained by one of the partners, even if the other partners were not privy to the fraud. (Kilby v. Wilson, Ry. & Mood. N. P. Rep. 170.) And according to the decision of the court of king’s bench in the case of Stone v. Marsh and others, (6 Barn. & Cress. Rep. 551,) if the proceeds of these notes had been applied to the payment of a debt for which Manice, Phelps and Foote were all legally or equitably liable to Bullock, the plaintiffs might have recovered upon the money counts in the first suit, upon proof of such joint liability. Or they might recover in an action of trover, for the conversion of the notes to the use of the members of that firm as it existed at the time of such conversion. And as the evidence in this case clearly shows that the proceeds were applied to the payment of a debt to Bullock, for which Manice and Phelps were jointly liable, an action of assumpsit may be maintained, against those two persons, for the money paid for them, or received by them for the use of the plaintiffs. Or an action of trover may be maintained against both or either of them, for the conversion to their use of the notes fraudulently obtained by Phelps acting in the name of the firm of which Manice was a partner. For in such case the maxim applies, quifacit per aliumfacit per se. (Watson On Part. 235.)
And it makes no difference in this case that the action of trover was brought against Manice alone. For in all actions of *121 tort, whether against partners or others, the action may be brought against all or any of them who are liable, at the election of the plaintiff. (Story On Part. 159.) The plaintiffs, therefore, were entitled to recover in this suit on the count in trover, unless the judge who tried the cause was right in supposing the verdict and judgment in the former suit against Ma-nice, Phelps and Foote jointly, in an action of assumpsit, could be given in evidence, in this cause, under the general issue and without notice, and that it formed a flat bar to the recovery in the present form of action. These questions I will next proceed to consider.
The question whether a verdict and judgment for the defendant in "a former action is a bar to a second suit for the same cause or matter, does not depend upon the fact that the proof in the former suit was sufficient to sustain that action. For where the same matter was in issue and submitted to the jury in the former suit without sufficient proof, the decision of the jury upon the matter in issue, and thus submitted to them, followed by the judgment of the court upon their verdict, will be a bar to another action for the same cause or matter, where the same evidence which is necessary to sustain the second suit, if it had been given in the former action, would have authorized a recovery therein. Where a general declaration embraces several causes of action, the plaintiff in a second suit may show that he offered no evidence as to one or more of those causes of action, and that the cause went to the jury upon a different part of his claim from that for which the second suit is brought. And then the jiidgment in the first action will be no bar to the second. But where he attempts to give evidence as to all the causes of action, and submits the question to the jury without withdrawing any part of his claim, and he fails as to the whole or a part for want of sufficient proof, the defendant may insist upon the first judgment as a bar, if the same evidence which is sufficient to sustain the second suit would have authorized a recovery in the first action, in case it had been produced upon the trial thereof. (Stafford v. Clark, 1 Car. & Payne's Rep. 403 ; 9 J. B. Moore's Rep. 724, S. C.) It is a matter of no conse *122 quence, therefore, upon the question of estoppel in the present case, that the defendant Manice carefully concealed from the knowledge of the plaintiffs, on the first trial, the fact of the agreement made in England between him and Foote to take the latter into the firm previous to the loan of Bullock upon the copartnership checks; and left them to suppose that the new partnership with Foote was actually formed as late as the 30th of March, 1833, when the notice that he was taken into the firm was first publicly announced in the newspapers. Whether such a suppression of a material fact, for the purpose of defeating the recovery in the first action, and then surprising the plaintiffs with the proof thereof in the second suit to prevent a recovery in that also, is consistent with mercantile honesty, is a question which must be laid entirely out of view by this court in deciding a dry question of law. But if the justice of the case is clearly with the plaintiffs, and the defendant has made a technical slip in setting up his defence of a former verdict in his favor for the same cause of action, the court as a matter of course will not permit him to amend his plea, under such circumstances, to enable him to avail himself of an unconscientious defence.
It is no answer to the defence of a former recovery that the form of action in both suits is not the same; or that all the plaintiffs or defendants in both suits are not the same. For if the same question was submitted to the jury in the first action, and the evidence in the last suit, if it had been given in the first action, would have been equally available as in the last, to entitle the plaintiff to recover under the state of pleadings in both, then the verdict and judgment in the first action, provided the defence is brought before the court in the second suit in proper form, is an absolute bar to any recovery therein. (Lawrence v. Vernon, 3 Sumn. Rep. 20.) But where the form of the first action was such that the proof necessary to a recovery could only be brought forward in a different form of action, or where, from the number of the plaintiffs or defendants in the first suit, the testimony relied on in the second is sufficient to authorize a recovery in such second action, but could not have produced *123 a different result in the first, the failure of the plaintiffs in the one suit is no bar to their recovery in the other, although it is for the same cause of action for which they attempted to recover in the first suit.
Here the first suit' was an action of assumpsit against three " defendants. And although it appears from the record that Phelps and Foote were out of the jurisdiction of the court, and were not served with process, and that Manice alone appeared and defended the action, the plaintiffs could not recover in that suit against either of the defendants therein, unless they could prove a joint liability of all the defendants, and in that form of action. For in an action of assumpsit, or in any other action ex contractu, the plaintiff must prove a joint cause of action against all, except in the case of suits against the parties to negotiable paper, as provided for by statute, or where some of the defendants set up the defence of infancy, or a discharge under the bankrupt act, or some other personal defence of that character.
The court charged the jury in the former suit that if the notes of the 26th of April were endorsed by Phelps in the name of the firm, for the benefit of the plaintiffs, and if neither the notes themselves, nor the proceeds thereof, came to the defendants, and Manice and Foote had no agency in any fraudulent representations to the plaintiffs, the defendants were not liable. If this part of the charge was correct, the plaintiffs certainly could not have recovered in that suit, even upon the evidence now produced, unless the jury came to the conclusion that Manice and Foote were both privy to or cognizant of the fraud by which the notes were obtained, or that those notes or the proceeds thereof were actually applied to the payment of a debt for which Foote as well as Manice &. Phelps were legally liable to Bullock. The jury found a verdict against the defendants for the amount of the note dated the 15th of November, 1832, and interest; which note was discounted by Shipman & Corning, and the proceeds placed to the credit of all the defendants in that suit, in April, 1833. And the jury would also have found a similar verdict for the plaintiff for the amount of the three notes of the 26th of April, under the charge *124 of the court, if it had been shown on that trial that the proceeds of those notes had also been placed to the credit of the firm, or had been applied to the payment of a debt for which all three of the defendants were jointly liable. For in that case it would have been a conversion of the notes "by Phelps, to the use and for the benefit of the defendants in that suit. And the plaintiffs could probably waive the tort and recover in assumpsit upon the money counts. But as the money received from Bullock never was applied to the use of the firm of which Foote now appears to have been a member at the time that money was borrowed, and as Bullock lent the money without knowing any thing of the agreement made in England by which Foote was brought into the firm before that time, I do not see how he could have been made liable to Bullock, either at law or in equity, for money which Phelps had obtained upon the credit of Manice and himself only, and had not applied to the use of the firm of which Foote was a member. And if Phelps & Manice were alone liable to Bullock, upon the facts as they now appear, the money of the plaintiffs was paid and received for their use only, and not for the joint use of themselves and Foote. So that it was impossible, in the first suit, for the plaintiffs to have recovered upon the common counts of the declaration against the three, even if the facts as they now appear had been given in evidence in that suit. The verdict and judgment upon the common counts of that declaration cannot then be a bar to the recovery against Manice in this action, nor to a suit in assumpsit against him and Phelps jointly. (Lawrence v. Hunt, 10 Wend. Rep. 80.) For these reasons I think the charge of the circuit judge who tried this cause was wrong, even if the verdict and judgment in a former suit could have been given in evidence as a flat bar, under a simple plea of not guilty, in an action of trover.
Again, it appears to be pretty well settled that in actions of assumpsit, where any thing which shows that the plaintiff has no subsisting right of action may be given in evidence under the general issue, a former verdict and judgment may be given in evidence without being pleaded. (Young v. Black, 7 *125 Cranch, 565; Killheffer v. Herr, 17 Serg. & Rawle, 322; Wood v. Jackson, 8 Wend. Rep. 9.) But it does not appear to be perfectly settled in England that the former recovery, when given in evidence under the general issue in assumpsit, where it might have been pleaded, is conclusive.as a flat bar, as it would have been if pleaded in bar of the second suit. (See Stafford v. Clark, 1 Car. & Payne, 403 ; 9 J. B. Moore, 724, S. C.) The cases in which the courts in this state and in England have, held the former verdict and judgment conclusive as a bar, when given in evidence without being pleaded, are those in which the party insisting upon the estoppel has had no opportunity to plead it; as in an action of ejectment, where special pleading is not allowed, (Wood v. Jackson, 8 Wend. 35,) or in cases where the plaintiff’s own title is by estoppel, and the defendant, by his pleading, does not give him an opportunity to reply the estoppel. (Wright v. Butler, 6 Wend. 284; Burt v. Sternburgh, 4 Cowen, 559.)
The general rule, however, unquestionably is, that where the party in whose favor the former verdict and judgment were rendered, wishes to rely on them as a conclusive bar, or as an estoppel, he must plead such former judgment in bar, if he has an •opportunity to do so. And if he neglects to set it up by pleading, and puts the same matter again in issue to be tried, the jury may decide such issue according to the right and justice of the case as it appears to them from the evidence, notwithstanding the verdict and judgment in the former suit. (Trevivan v. Lawrence, 1 Salk. 276; Outram v. Morewood, 3 East, 346 ; Howard v. Mitchell, 14 Mass. Rep. 241; Killheffer v. Herr, 17 Serg. & Rawle, 319.)(a) Bird v. Randall, (3 Burr. Rep. 1345,) was not a case of estoppel, but of a former recovery against a third person, for the same demand. A former recovery against the defendant for the same debt or claim must necessarily be an absolute defence to a second suit for the same cause, whenever it can be given in evidence under the general issue. But I have *126 not been able to find any decision, either in the courts of this country or of England, in which an action of trover, or a special action on the case, has been held' to form an exception to the general rule that, to make a mere estoppel a flat bar in a second suit, it must be pleaded. On the contrary, I find that this general rule has in England been applied to actions on the case as well as to other actions. (Vooght v. Winch, 2 Barn. & Ald. Rep. 662; Hooper v. Hooper, McClel. & Younge’s Rep. 509.) And the court whose decision we are now considering, in a recent case, appears to have conceded that a former recovery may be pleaded in bar to an action of trover. (See Briggs v. Brown, 3 Hill’s Rep. 87.)
The judge who tried this cause was therefore wrong in holding the record of the former verdict and judgment an absolute bar when given in evidence under the general issue, where the defendant might have pleaded it as an estoppel, if the former suit was in fact for the same matter.
For these reasons the law as well as the justice of this case is with the plaintiffs in error; and the judgment of the court below should be reversed.
Bockee, Senator.
This cause is before us on the bill of exceptions taken by the plaintiffs to the charge of the circuit judge. The supreme court gave judgment for the defendant on the verdict rendered by the jury in pursuance of the instruction and charge given them at the trial. The judges of that court have not given us the reasons upon which their judgment was founded, as the constitution seems to require, and we are left to grope our way in darkness and to examine and decide this cause without the light which their wisdom, experience and researches would have shed upon it. On writs of error it does not belong to the duties of this court to decide any questions of fact. We are limited to an examination of the questions of law arising in and decided by inferior judicatories; and the sole question therefore which this case presents for our decision is the correctness of the charge of the circuit judge.
*127 The judge’s charge embraced three several points, viz: 1st. That a prior judgment may be given in evidence under the general issue in an action of trover, with the like effect as if pleaded; 2d. That whether the matter in issue had been before adjudicated, was in this case a question of law for the decision of the court; and 3d. That in judgment of law the question of Manice’s liability to the plaintiffs, as claimed in the present action, was determined in the suit brought in the superior court against Manice & Phelps, jointly with Foote, and that the said suit and judgment in the superior court constituted a complete bar to the plaintiffs’ recovery in this suit. It is obvious that the judge’s charge decided the whole cause, and nothing was left for the consideration of the jury. If the charge was correct in point of law, the judgment may be allowed to stand. If it was incorrect, the plaintiffs are entitled to a new trial.
On the first point I think the judge was correct. The case of Kitchen and others, assignees &c. v. Campbell, (3 Wilson, 304,) is an ancient and leading authority. There the plaintiffs first sued Campbell, together with the sheriff of Surry, in an action of trover for goods levied upon by execution, and a verdict and judgment were rendered for the defendants. The plaintiffs afterwards brought an action on the case against Campbell alone, for the money received by him under the execution; and the prior judgment, though given in evidence under the general issue, was held a bar to the action. . Lord Mansfield, in Bird v. Randall, (3 Burr. 1345, 1353,) draws a distinction between cases upon torts and actions upon the case; saying that, in the former, a recovery, release or satisfaction, must be pleaded, but in actions on the case, of which this is one, they may be given in evidence. The other more modern cases cited by the defendant’s counsel, fully maintain the principle that, in actions on the case, a former recovery or judgment may be given in evidence and need not be specially pleaded. On this point I am of opinion that the judge was right.(a)
*128 I think he was also right on the second point, and that the effect of the prior judgment was a question of law for the decision of the court. The very circumstance of the cause being here, seems to prove that it is a question of law. It is indeed the main question which we have to decide.
We are then brought to the third point in the judge’s charge, which is, that the law would pronounce the former suit and judgment in the superior court to be a complete bar to the present action. The defendants’ counsel rely upon Kitchen v. Campbell, before cited, as showing “ that the plaintiffs in error could not avoid the binding and conclusive force of the former decision by changing the form and name of their action from assumpsit to trover, or by suing one defendant singly instead of the three defendants proceeded against in the former suit.” If I understand this position, which was made one of the points on the argument of this cause, it is not very pregnant with meaning. When we speak of the binding and conclusive force of a judgment, we do in terms exclude all the means of avoiding it; and so far as any prior judgment has binding and conclusive force, it must be admitted that it cannot be avoided by changing the form of the action or the names of the parties. Such was the principle decided in Kitchen v. Campbell. In that case the former judgment was held to be a bar for other reasons than the change in the form of action. There, as here, the form of action was changed, and one defendant, instead of two, was selected. It is manifest that such change made no difference. The decision of the court was founded upon the' identity of the question presented, with that before decided. In the first suit, which was trover against Campbell and the sheriff of Surry, a verdict was rendered in favor of the defendants. The question was, whether the title to the bankrupt’s goods vested in the plaintiffs before the levying of the execution ? In the second suit against Campbell for the money received by him on the execution, the identical question arose. In both cases the decision depended on the priority of title, and that question having been once decided by a jury against, the plaintiffs, the principle of res judicata was properly applied. It *129 would appear from the record in the first suit that the ownership of the goods was adjudged to be not in the plaintiffs. They were estopped from averring any fact inconsistent with the record; and it was obvious to reason and common sense, that, having no title to the goods, they could not maintain an action for the money received on the sale under the execution.
The judgment in the superior court cannot operate against the present plaintiffs by way of estoppel. They are not estopped from averring a fact consistent with the record. And it is perfectly consistent with the record that the plaintiffs should have their action against an individual member of the firm, if sufficient ground of separate liability is shown, although they failed in sustaining an action against the three partners. The binding and conclusive force and effect of the former judgment is to bar any future action for the same cause against Phelps, Manice and Foote. The rule to be extracted from the case of Kitchen v. Campbell is, that where a suit has been finally determined, another suit shall not be maintained for the same cause of action. The cause of action is understood to be the same, when the same evidence will support both suits, though they may be in different form. When the question decided in the first suit is the same with that raised in the subsequent action, it ought to be barred. This rule is subject to some exceptions, as where a party has mistaken his action; but in its general application it is wise and salutary, and calculated to preserve the rights of parties and prevent vexatious litigation.
The application of the test to which I have adverted will enable us to discriminate those cases where an action is barred by a previous judgment. Like, the thread of Ariadne, it will guide us securely through the labyrinth of legal forms and conflicting decisions. In the present case the judgment in favor of Phelps, Manice and Foote has not any binding and conclusive force to bar an action against Manice. The subsequent suit may be founded on the same transaction; the testimony in both actions may run together pari passu to a great extent; yet the evidence on which an action must be sustained against Manice, will of necessity vary from that which would be re *130 quired to maintain an action against Phelps, Manice and Foote. The evidence cannot be the same in both actions, for the evidence necessary to charge Manice in this action, would have been a failure on the trial before the superior court. The action might not have been maintainable against the three partners, and yet it would not follow but that Phelps and Manice, one or both, either by fraud, or by engaging in some transaction separate from their partnership business, or by some concealment or collusion, might have made themselves liable to the plaintiffs. The object of the present suit was to fix such liability upon Manice. Whether the plaintiffs could succeed in fixing such liability upon him, is not for this court to determine. If the judge has by misdirection prevented the jury from considering and deciding that question, injustice has been done, and this court is bound to correct it. I have not examined the evidence appearing in this cause with a view to satisfy my mind whether Manice ought to be held individually liable for the amount of the three notes rejected on the trial before the superior court. I did not think it my duty to do so, and have formed no opinion whether he ought or ought not to be held liable. I leave that question for another and more appropriate tribunal. I maintain the converse of the proposition of the circuit judge, and am clearly and decidedly of the opinion that the proceedings in the superior court did not, either by way of estoppel, or on the principle of res judicata, form a complete bar to the present action. If the judgment in the superior court is a shield to Manice, will any gentleman learned in the law or otherwise, give me a reason why it would not be equally so as to Phelps ? The fraud of Phelps is indeed open and glaring, but the pleadings and evidence are intended to charge Manice, either as a dormant partner in that fraud, or as having incurred liability for its consequences by some connivance or concealment. I do not intend to place the moral standing and reputation of these persons upon the same level. But the law is no respecter of persons. If the principle of res judicata will avail to protect one of these parties, I can discover no reason why the same broad shield will not cover the other. The judge most certain *131 ly could not have given such instruction to the jury if the suit had been against Phelps. His sense of justice would have revolted against it. Yet the same principle of legal impartiality must apply to both Phelps and Manice. Manice has never met and answered the demand which the plaintiffs now make against him. The question of his individual liability, separate from his partners, was not decided, and, from the nature of the case and the state of the pleadings, could not have been decided, in the superior court. That same question has not been legally decided in the present cause. As against Manice, the plaintiffs are entitled to have their day in court, and to have their action legally tried and determined. Manice now stands absolved from liability by the mistaken legal dictum of the court; not by the verdict of a jury rendered upon due deliberation and examination of the evidence. The judgment of the supreme court should be reversed.
Putnam, Senator.
The-first question which arises in this case is, whether the evidence respecting the former suit was admissible under the general issue. The rule is well established that in actions of trover the defendant may give in evidence any defence under a plea of the general issue, except the statute of limitations, and perhaps a release. Many authorities might be cited to sustain this position, but I will only refer to the case of Young v. Rummell, (2 Hill, 478, 481,) where the supreme court laid down the doctrine as follows: “ A former recovery in which the same matter was tried upon the merits, between the sanie parties, may be given in evidence, without being specially pleaded, wherever the party, whether plaintiff or defendant, had no opportunity to plead the recovery specially. For example, the defendant may give the judgment in evidence under not guilty in ejectment and trover—no other plea being allowed in those actions.”
When a former suit is properly received in evidence under the general issue, I think it should be just as conclusive in all cases as though the defendant had pleaded the matter specially. The decisions on this subject present a greater diversity of judi *132 cial opinion than has existed in respect to almost any other-question ; some, of them holding that if the defendant omit to plead the former suit specially, where he has an opportunity of so doing, it is not conclusive, but only evidence for the consideration of the jury, which they may disregard; while others hold that the effect of the former'suit depends in no degree upon the time or manner of bringing it forward, but upon the general doctrine of res judicata. The latter is obviously the view taken of the question by Chief Justice De Grey, in delivering the unanimous opinion of the judges on the trial of the Duchess of Kingston. (20 How. St. Tr. 537, 8.) He there said, “ that the judgment of a court of concurrent jurisdiction directly upon the point, is as a plea, a bar, or as evidence, conclusive, between the same parties, upon the same matter, directly in question in another court.” This rule was expressly recognized and acted upon in Gardner v. Buckbee, (3 Cowen, 120,) and that case has been regarded as law ever since. The action was originally brought in the common pleas to recover upon one of two notes given to the plaintiff on the purchase of a schooner, and the defendant set up fraud in the sale. It appeared that the plaintiff had previously attempted to recover upon the other note in the marine court, but the same defence was interposed, and the defendant obtained judgment. On the trial of the second suit the record of the judgment, was given in evidence under the general issue, together with parol proof to identify the matters litigated; the defendant insisting that the judgment was a bar. The common pleas decided that the evidence was admissible, and allowed it to go to the jury, in connection with other proof of the alleged fraud, for their consideration; but expressly instructed them that the former judgment was not conclusive. The supreme court held the charge to be erroneous, saying: “ The judge ought to have charged that if, from the evidence, they were satisfied the matters in question had been passed upon in the marine court, the record was conclusive. ” The case of Burt v. Sternburgh, (4 Cowen, 559,) is to the same effect. In Wood v. Jackson, (8 Wend. 24, 5,) Chief Justice Savage observed that the decisions had not been uniform, and *133 he expressed a doubt as to where the weight of authority lay. But in Lawrence v. Hunt, (10 Wend. 83, 4,) Nelson, J. evidently inclined to the opinion that the former suit was to be regarded as conclusive. The case of Kitchen and others, assignees &c. v. Campbell, (3 Wils. Rep. 304,) is in several respects analogous to the present. That was an action of assumpsit for money had and received to the use of the plaintiffs, as' assignees of a bankrupt. The bankrupt, being indebted to Campbell for borrowed money, gave him a judgment, on which execution was issued to the sheriff of Surry, who collected the amount out of the bankrupt’s goods. The commission of bankruptcy was not awarded until after the levy under Campbell’s execution, but an act of bankruptcy had been committed before the judgment was obtained. Campbell pleaded the general issue, and proved at the trial that the plaintiffs had brought a previous action of trover against the sheriff of Stirry together with Campbell, for the goods levied on under the execution, wherein the defendants obtained a verdict and judgment; and the court decided unanimously that this constituted a bar to the second action. “ We are of opinion,” they said, “ that the plaintiffs, having brought trover in this court against the sheriff of Surry and the now defendant, to recover the value of the goods of the bankrupt taken in execution, (which action well laid,) have made their election ; and there being a verdict and judgment upon record in that action against the plaintiffs, they are barred from having the present or any other action; for you shall not bring the same cause of action twice to a final determination : nemo debet bis vexari, upon this we found our judgment; and what is meant by the same cause of action is, where the same evidence will support both the actions, although the actions may happen to be grounded on different writs. This is the test to know whether a final determination in. a former action is a bar or not to a subsequent action.”
The case last cited disposes of the question as to the conclusiveness of a former verdict and judgment, when offered in evidence under the general issue. It also decides that, though the form of action in the two suits be different, the prior judgment
*134 precludes the right of litigating the same matter anew. And it settles another point, viz. that the mere fact of the present suit being against only one of the persons who were defendants in the former, is not an answer to the defence. (See also Lawrence v. Hunt, 10 Wend. 80, 83; Case v. Reeve, 14 Johns. Rep. 82; Adams v. Barnes, 17 Mass. Rep. 365; Cowen & Hill’s Notes to Phil. Ev. 804 to 824.)
The cause of action in both suits I think was the same; for the ground on which Manice and Foote were sought to be charged jointly with Phelps in the the superior court, was the same as that on which the present action proceeds. I have not been able to discover that any evidence was given in either case going to connect Manice with Phelps, as an actual participant in the fraud by which the notes in question were obtained. The plaintiffs are therefore endeavoring to litigate over again in a different action brought against one of the defendants in the prior suit, the identical question which was there determined against them. I am of opinion that the decision of the court below was right, and that the judgment ought to be affirmed.
On the question being put, “ Shall this judgment be reversed 7” the members of the court voted as follows:
For reversal: The Chancellor, and Senators Bartlit, Bockee, Dixon, Ely, Foster, Franklin, Lawrence, Lott, Platt, Porter, Rhoades, Scott and Wright—14.
For affirmance: Senators Denniston, Hard, Putnam, Scovil and Works—5.
Judgment reversed.

{a) See Magrath v. Hardy, (4 Bing, N, C. 782.)

 To this point, see the opinion of Bronson, J., in Young v. Rummell, (2 Hill, 478,) and the cases there cited.