74 U.S. 82 (____)
7 Wall. 82
AURORA CITY
v.
WEST.
Supreme Court of United States.

*85 Mr. Lincoln, for the City, plaintiff in error.
Mr. Stanbery, who filed a brief for Mr. Mitchell, contra.
*87 Mr. Justice CLIFFORD delivered the opinion of the court.
Fifty bonds, of one thousand dollars each, were issued by the corporation defendants on the first day of January, 1852, in payment of a subscription of fifty thousand dollars, previously made by the order of the common council of the city, to the capital stock of the Ohio and Mississippi Railroad Company. Authority to subscribe for such stock, and to issue such bonds, under the conditions therein specified, is conferred upon the corporation by the eighteenth section of their charter. Said bonds were negotiable, and were made payable in twenty-five years from date, with interest at six per cent. per annum. Interest warrants, or coupons, were attached to the several bonds, for the payment of each year's interest, till the principal of the bonds should fall due.
Plaintiffs became the holders for value of all of the bonds, together with the coupons thereto attached, and the defendants having neglected and refused to pay the interest for the three years specified in the record, the plaintiffs brought an *88 action of assumpsit, to recover the amount of the unpaid interest, as represented in the respective coupons for those years. Their claim was set forth in the declaration in a special count, alleging the substance of the facts as above stated, and the declaration also contained a second count for goods sold and delivered, which also embraced the common counts. Separate demurrers were filed to the respective counts, but they were overruled by the court, and were afterwards withdrawn by the defendants. They also pleaded the general issue, called, in the record, the first plea, which was subsequently withdrawn.
Seven special pleas, numbered from two to eight, inclusive, were also filed by the defendants to the special count, but the withdrawal of the general issue left the second count without any answer.
Second plea alleged that the bonds and coupons described in the special count, were issued without any good or valuable consideration.
Third plea alleged that the corporation was not authorized to issue the bonds to the railroad company, because the company was not chartered to construct a railroad to the city.
Fourth plea alleged that a majority of the qualified voters of the city did not, at an annual election, signify their assent to the making of the subscription to the stock, as required by law.
Fifth plea alleged that the bonds and coupons were null and void, because the railroad company was not a company chartered to make a road to said city.
Sixth plea alleged that the bonds and coupons were null and void, because the subscription to the stock was made, and the bonds and coupons were issued, before the road was located to the city, and before the railroad company had determined to make the location.
Seventh plea alleged that the bonds and coupons were null and void, because the stock of the company, before it was issued to the defendants, became of no value through the mismanagement of the directors, and was wholly worthless.
*89 Eighth plea alleged that the bonds and coupons were null and void, because the proper officers of the city never sold and delivered them, as required by law, but that the company obtained the possession of the same without such sale, and without authority.
Notice to the plaintiffs of the respective defences, so pleaded, is alleged in each of the several pleas. Six only, of the eighteen replications filed by the plaintiffs, remain to be examined, as all the rest of the series were subsequently withdrawn without objection, or were held to be bad on demurrer.
Those not withdrawn, are the first, second, fifth, sixth, eighth, and tenth of the series, as appears by a careful inspection of the transcript. Of these, the first was to the second plea, and set up a former judgment rendered in favor of the plaintiffs, May Term, 1856, of the Circuit Court for the County of Dearborn, in the State of Indiana, in a certain action brought by the plaintiffs against the defendants, to recover the amount of the coupons attached to the same fifty bonds, which fell due the first day of January next preceding the rendition of the judgment, and the plaintiffs prayed judgment, if the defendants ought to be admitted to aver against that record, that the bonds and coupons were issued without any good or valuable consideration.
Second replication was to all the pleas, except the first, and set up a former judgment recovered by the plaintiffs, May Term, 1857, in the Circuit Court of the United States for the District of Indiana, in an action of assumpsit, against the defendants, for the amount of another set of the coupons attached to the same fifty bonds.
Fifth replication was to the third, fourth, fifth, sixth, seventh, and eighth pleas, and also set up the judgment recovered in the Circuit Court of Dearborn County, as described in the first replication, and substantially in the same form.
Sixth replication was to the fourth plea only, and set up the same judgment, and in the same form as pleaded in the fifth replication.
*90 Eighth replication was also to the fourth plea, and alleged that the defendants were estopped, by the recital in the bonds, from denying that a majority of the qualified voters of the city, at an annual election, signified their assent to the subscription.
Tenth replication was to the third, fifth, and sixth pleas, and set up the proceedings of the city council therein recited, as an answer to the said several pleas.
Defendants demurred specially to each of the several replications, but the court overruled the respective demurrers, and held that the several replications were sufficient.
Leave was granted to the defendants, at the same time, to rejoin, and on a subsequent day they appeared and filed a rejoinder to the second replication.
Parties also filed an agreement, at the same time, to the effect that the rejoinder should be regarded as pleaded to all the replications adjudged good, except the tenth, which was the second replication to the third, fifth, and sixth pleas.
Substance and effect of the matters alleged in the rejoinder were, that the plaintiffs recovered another judgment against the defendants in the Circuit Court for said Dearborn County, in a suit founded on another and different set of the coupons attached to the same fifty bonds, and that the Supreme Court of the State, on appeal, reversed the judgment for error, and remanded the cause for further proceedings.
Plaintiffs demurred to the rejoinder, and the court sustained the demurrer, and held that the rejoinder was bad. Thereupon the parties waived a jury, and submitted the cause to the court for the assessment of damages, and the court, having heard all the evidence introduced by the parties, rendered judgment for the plaintiffs in the sum of ten thousand five hundred and thirty-four dollars and fifty cents damages, and costs of suit.
1. Judgment having been rendered for the plaintiffs, the defendants tendered a bill of exceptions, which was allowed by the presiding justice, and signed and sealed. Statement in the bill of exceptions is, that the parties submitted the *91 cause to the court upon the record and the evidence therein set forth; but it is obvious that, when it was submitted, there was nothing left to be done except to compute the damages.
None of the pleadings terminated in issues of fact, except such as had been withdrawn or waived by one side or the other and all the issues of law had been determined against the defendants. When the defendants withdrew the general issue, and left the second count in the declaration without any answer, the plaintiffs, as upon nil dicit, might have moved for judgment for the want of a plea, but they did not submit any such motion, and both parties proceeded thereafter throughout the trial as if there was but one count in the declaration.[*]
Viewed in the light of the proceedings in the suit, subsequent to the withdrawal of the general issue, it must be understood that the second count was waived, as there is not a word in the record to support the proposition assumed by the plaintiffs, that the judgment was rendered on that count.
2. Every issue of fact having been withdrawn, and every issue of law in which the other pleadings terminated having been decided in favor of the plaintiffs, they were clearly entitled to judgment on the first count. Irrespective, therefore, of the bill of exceptions, the writ of error brings here for review the decisions of the court below, in overruling the demurrer of the defendants to the tenth replication of the plaintiffs, and in sustaining the demurrer of the plaintiffs to the rejoinder of the defendants as filed to the first, second, fifth, sixth, and eighth replications of the plaintiffs.
Such being the state of the case the decisions of the court below may be re-examined in this court without any bill of exceptions, as the questions are apparent in the record, and arise upon demurrers to material pleadings on which the cause depends.[]
*92 3. Examination of the questions growing out of the decision of the court below in sustaining the demurrer to the defendants' rejoinder will first be made, because if the objections taken to that decision are overruled, the questions involved in the other decision will be of no importance, as the plaintiffs in any event must prevail, and the judgment of the Circuit Court must be affirmed. They must prevail in that event because the several replications to which that rejoinder was filed, as extended and applied by the agreement of the parties, furnish a complete answer to all the special pleas of the defendants.
Before proceeding to consider the questions growing out of that decision of the court below, it should be remembered that the defendants, in filing the rejoinder, waived their demurrers to all the replications to which it was filed. Applied as it was by the agreement, to all the replications not abandoned, except the tenth, it follows that all the demurrers except that filed to the tenth replication were waived.
Pleading over to a declaration adjudged good on demurrer is a waiver of the demurrer, and when a defendant files a rejoinder to a replication, previously adjudged good on demurrer, his act in pleading over must for the same reason be held to have the same effect.[*]
4. Extended argument to show that the matters alleged in the rejoinder are not of a character to constitute a sufficient answer to the several replications to which it was filed is unnecessary, as it is scarcely so contended by the defendants. Undoubtedly the view of the pleader was to set up an estoppel against the matters pleaded by the plaintiffs in their first, second, fifth, sixth, and eighth replications, and to claim the benefit of the rule that an estoppel against an estoppel opens up the whole matter and sets it at large; but the insuperable difficulty in the way of the attempt to apply that rule, even supposing that the former judgments are pleaded as technical estoppels, is that the matters pleaded in the rejoinder *93 do not amount to an estoppel, as they merely show that the judgment for the plaintiff, as recovered in that case in the court of original jurisdiction, was reversed in the appellate tribunal, and that the cause was remanded to the subordinate court for further proceedings. Second trials often result in the same way as the first, and certainly the reversal of the judgment under the circumstances shown in the allegations of the rejoinder is not conclusive evidence that the plaintiffs may not ultimately recover. Unless a final judgment or decree is rendered in a suit the proceedings in the same are never regarded as a bar to a subsequent action. Consequently where the action was discontinued, or the plaintiff became nonsuit, or where from any other cause, except perhaps in the case of a retraxit, no judgment or decree was rendered in the case, the proceedings are not conclusive.[*]
5. Suppose the rejoinder is bad, still the defendants contend that the replications to which it was filed, are also bad, and that they are entitled to judgment, as the first fault in pleading was committed by the plaintiffs. Doubts were entertained at first whether, inasmuch as the demurrers were abandoned after the replications had been adjudged good, the point was open to the defendants; but the better opinion is, that the waiver of the demurrers left the rights of the parties in the same condition as they would have been if the demurrers had never been filed. Conceding that to be the rule, then it is clear that the defendants may go back and attack the sufficiency of the replications, as it is the settled rule of law in this court in respect to demurrers, that although the pleadings demurred to may be bad, the court will nevertheless give judgment against the party whose pleading was first defective in substance.[]
*94 Statement of the rule by Stephen is, that on demurrer to the replication, if the court think the replication bad, but perceive a substantial fault in the plea, they will give judgment, not for the defendant but for the plaintiff, provided the declaration be good; but if the declaration also be bad in substance, then upon the same principle judgment would be given for the defendant.[*]
Apart, therefore, from their own demurrers, and solely by virtue of the plaintiffs' demurrer to their rejoinder, the defendants may go back and attack the plaintiffs' replications, but they can do so only as to defects of substance, as it is well settled that the rule applies only where the antecedent pleading is bad in substance, and that it does not extend to mere matters of form.[] Mere formal objections, therefore, to the replications, will not be noticed, as such objections are not open under the pleadings in this record.
6. Four of the replications set up the two former judgments, and as they involve the same questions, they will all be considered together. Duly exemplified copies of those judgments are exhibited in the transcript, and they are well described in the replications. When the record of a former judgment is set up as establishing some collateral fact involved in a subsequent controversy, it must be pleaded strictly as an estoppel, and the rule is, that such a pleading must be framed with great certainty, as it cannot be aided by any intendment. Technical estoppels, as contended by the defendants, must be pleaded with great strictness, but when a former judgment is set up, in bar of an action, or as having determined the entire merits of the controversy, it is not required to be pleaded with any greater strictness than any other plea in bar, or any plea in avoidance of the *95 matters alleged in the antecedent pleading of the opposite party.[*]
Same rule applies to a replication as to a plea, as the plaintiff cannot anticipate what the defence will be when he frames his declaration. Cases arise, also, where the record of the former suit does not show the precise point which was decided in the former suit, or does not show it with sufficient precision, and also where the party, relying on the former recovery, had no opportunity to plead it; but it is not necessary to consider those topics, as no such questions are directly presented in this case for decision.
Aside from all these questions, and independent of the form of the replications, the defendants make two objections to the theory, that the former judgments, set up in this case, are a conclusive answer to the respective defences pleaded in their several special pleas.
First. They contend that a judgment on demurrer is not a bar to a subsequent action between the same parties for the same cause of action, unless the record of the former action shows that the demurrer extended to all the disputed facts involved in the second suit, nor unless the subsequent suit presents substantially the same questions as those determined in the former suit. Where the second suit presents no new question, they concede that the judgment in the former suit, though rendered on demurrer, may be a bar to the second suit, but they maintain that it can never be so regarded, unless all those conditions concur.
Secondly. They also deny that a former judgment is, in any case, conclusive of any matter or thing involved in a subsequent controversy, even between the same parties for the same cause of action, except as to the precise point or points actually litigated and determined in the antecedent trial; and they insist that none of the defences set up in their several special pleas were directly presented and determined in either of the former suits, as supposed by the plaintiffs.
*96 7. Identity of the parties, in the former suits, with the parties in the suit at bar, is beyond question, and it cannot be successfully denied that the cause of action, in the former suits, was the same as that in the pending action, within the meaning of that requirement, as defined by decided cases of the highest authority. Where the parties are the same, the legal effect of the former judgment as a bar is not impaired, because the subject-matter of the second suit is different, provided the second suit involves the same title, and depends upon the same question.[*] Second suit for trespass was held, in the case of Outram v. Morewood,[] to be barred by the record of a former judgment, between the same parties, recovered long before the second trespass was committed, as it appeared that the same title was involved in both cases. Precisely the same rule was also laid down in the case of Burt v. Sternburgh,[] and the reason assigned in its support was, that the plaintiffs' right of recovery, and the defence set up in the second action, depended on the same title as that involved in the former suit. So, where an importer and two sureties executed two bonds for duties, and the principal being insolvent, one of the sureties paid the whole amount and brought a suit against the other surety for contribution on the bond which first fell due, and was defeated, on a plea of release, by the obligee, with his own consent, the judgment was held in a subsequent suit for contribution for the amount paid on the other bond, to be a conclusive bar to the second claim, it appearing that both bonds were given at the same time, upon the same consideration, and as parts of one and the same transaction.[§]
Different bonds, it will be noticed, were described in the two declarations, but the decision of the court was placed upon the ground, that the cases were precisely alike, as to the right of the plaintiff to demand, and the duty of the defendant, as a co-surety, to make contribution. Nothing is better settled, say the court, than that the judgment of a *97 court of concurrent jurisdiction, directly upon the point made in the suit, is conclusive between the same parties, upon the same subject-matter, and they referred to the case of Gardner v. Buckbee,[*] as directly in point, and there can be no doubt that it is entirely analogous.
Substance of the material facts in that case was, that two notes had previously been given by the defendant for the purchase-money of a vessel, which he refused to pay; and in the suit on the first note the defence was, that it had been obtained by fraud, and the judgment was for the defendant; and in a subsequent suit on the other note, that judgment was held to be conclusive as to the question of fraud.
Weighed in the light of those decisions, it is quite clear that the cause of action, in the legal sense, is the same in the case at bar as that in the respective former judgments set up in the four replications under consideration.
In the suit determined in the State court, the declaration alleged to the effect that the defendants, under the authority conferred on the corporation by virtue of their charter, subscribed for fifty thousand dollars of the stock of the railroad company; that the company was chartered to construct, and was then constructing a railroad to said city; that a majority of the qualified voters of the city signified their assent to the subscription by expressing on their tickets, at an annual election in said city, that they were in favor of the same; that the defendants issued and sold the bonds to raise the funds to pay for the stock, and that the plaintiffs purchased the bonds and became the holders of the same and of the coupons thereto attached.
Defendants demurred to the declaration, but the court overruled the demurrer, and they subsequently filed an answer, setting up two defences: 1. That the location of the railroad was not established through the city till after the subscription. 2. That the company was not chartered to construct, and was not, at the date of the subscription, constructing a railroad to the city.
*98 Plaintiffs demurred to the first answer, and the demurrer was sustained by the court; and to the second defence they replied that the company located their railroad through the city before the bonds were delivered, and the defendants demurred to the replication, but the court overruled the demurrer.
Concluding statement of the record is, that "the said city, not desiring to controvert the facts stated in said reply, but admitting the same," judgment is rendered for the plaintiffs.
Second judgment set up in the replications, was rendered in the Circuit Court of the United States, in a suit on another set of the coupons attached to the same fifty bonds, and the declaration alleged that the defendants, by virtue of the power conferred in their charter, did lawfully and in due form execute and issue the bonds under the seal of the corporation, and that the plaintiffs, for a valuable consideration, became the legal holders and bearers of the same, and of the coupons thereto attached.
Special demurrer to the declaration was filed by the defendants, and they showed for cause, among other things, that it did not allege that the bonds were issued in pursuance of such a vote of the inhabitants of the city as the charter required. Both parties were heard, and the court overruled the demurrer and gave judgment against the defendants for the amount of the coupons, with interest. Inspection of those records, therefore, shows that the several questions involved in the present suit, as to the validity of the bonds, the time and place of the location of the railroad, and the alleged failure to secure the antecedent assent of a majority of the qualified voters of the city, were all put in issue in those cases. They were not only put in issue but they were determined, unless it be denied that the effect of a demurrer to the declaration or other pleading, is that it admits all such matters of fact as are sufficiently pleaded. Such a denial, if made, would be entitled to no weight, as it is a rule universally acknowledged.[*]
*99 Foundation of the rule is that the party demurring, having had his option to plead or demur, shall be taken, in adopting the latter alternative, to admit that he has no ground for denial or traverse.[*]
On the overruling of a demurrer, the general rule is that judgment for the plaintiff is final if the merits are involved, but a judgment that a declaration is bad, cannot be pleaded as a bar to a good declaration for the same cause of action, because such a judgment is in no just sense a judgment upon the merits.[] Other exceptional cases might be named, but it is unnecessary, as none of them can have any bearing on this case.[]
Taken as a whole, the pleadings of the defendants in the respective cases amounted to a demurrer to the respective declarations, and the substantial import of the decision of the court in each case, was that the declaration was sufficient to entitle the plaintiffs to judgment. Beyond question they were judgments on the merits, although rendered on demurrer; and in such case the well-settled rule is that every material matter of fact sufficiently pleaded is admitted.
Since the resolution in Ferrer's Case,[§] the general principle has always been conceded, that when one is barred in any action, real or personal, by judgment on demurrer, confession, or verdict, he is barred as to that or the like action of the like nature for the same thing forever.
Objection was taken in the case of Bouchaud v. Dias,[] that the former judgment between the parties could not be a bar to the subsequent action, because it was rendered on demurrer to the defendant's plea, but the court held that it made no difference in principle whether the facts upon which the court proceeded were proved by competent evidence, or whether they were admitted by the parties; and they also held that an admission, by way of demurrer to a pleading, in which the facts are alleged, must be just as available to *100 the opposite party as though the admission had been made ore tenus before a jury.[*]
Reference to cases decided in other jurisdictions, however, is unnecessary, as this court decided, in the case of Clearwater v. Meredith,[] that on demurrer to any of the pleadings which are in bar of the action, the judgment for either party is the same as it would have been on an issue of fact joined upon the same pleading, and found in favor of the same party.[]
Defence of a former judgment rendered upon general demurrer to the declaration was also set up in the case of Goodrich v. The City,[§] and this court held that it was a good answer to the suit, although the appellant insisted that it was not, because the judgment was rendered on demurrer.
8. Unsupported as the second proposition of the defendants is, as to the theory of fact on which it is based, it will not require any extended consideration. Much doubt and perhaps uncertainty exist in judicial decisions as to the limits, in certain cases, within which the conclusive effect of a judgment is confined by law as expressed in the maxim, Nemo debet bis vexari pro una et eadum causa, and also as to the manner in which the former judgment in that class of cases should be taken advantage of by the party.[]
But it is believed that the case at bar may be decided without encountering any of those conflicting opinions, as they occur chiefly where the party claiming the benefit of the former judgment failed to plead it at the first opportunity, or where no such opportunity was presented, and it was introduced under the general issue. Decisions made in such cases were cited at the argument, but they afford very little aid in the solution of any question arising in this record. Remark should also be made, that the several replications *101 set up the former judgments, not merely as settling some collateral fact involved in the case, but as having determined the entire merits of the controversy involved in the pleadings.[*]
Such a case falls directly within the rule that the judgment of a court of concurrent jurisdiction, or one in the same court directly on the point, is, as a plea, a bar, and conclusive between the same parties upon the same matter directly in question in a subsequent action.[]
When not pleaded, but introduced as evidence under the general issue, the judgment, it was said in that case, was equally conclusive between the parties; but that point will not be considered in this case, as it is in no manner involved in the pleadings. Express determination of the court, also, in the case of Outram v. Morewood,[] was, that the rule that a recovery in one action is a bar to another, is not confined to personal actions alone, but that it extends to all actions, real as well as personal.
Repeated decisions established the rule, in the early history of the common law, that where a judgment was rendered on the merits it barred all other personal suits, except such as were of a higher nature, for the same cause of action.[§]
Judgment in a writ of entry is not a bar to a writ of right; but the meaning of the rule is, that each species of judgment is equally conclusive upon its own subject-matters by way of bar to future litigation for the thing thereby decided. Hence, the verdict of a jury, followed by a judgment or a decree in chancery, as held by this court, puts an end to all further controversy between the parties to such suit, and it has already appeared that a judgment for either party on demurrer to a pleading involving the merits, is the same as it would have been on an issue in fact, joined upon the same pleading, and found in favor of the same party.[]
*102 Determination of this court, in the case of Aspden v. Nixon,[*] was that a judgment or decree, in order that it may be set up as a bar, must have been rendered by a court of competent jurisdiction upon the same subject-matter, between the same parties, and for the same purpose; and in the case of Packet Co. v. Sickles,[] the decision was, that "the essential conditions under which the exception of the res judicata becomes applicable are the identity of the thing demanded, the identity of the cause of the demand, and of the parties in the character in which they are litigants." Attempt was made in that case, as in this, to maintain that the judgment in the first suit could not be held to be an estoppel, unless it was shown by the record that the very point in controversy was distinctly presented by an issue, and that it was explicitly found by the jury; but the court held otherwise, and distinctly overruled that proposition, although the defence of estoppel failed for other reasons.
Courts of justice, in stating the rule, do not always employ the same language; but where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial, the matter must be considered as having passed in rem judicatam, and the former judgment in such a case is conclusive between the parties.[]
Except in special cases, the plea of res judicata, says Taylor, applies not only to points upon which the court was actually required to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.[§]
Substantially the same rule was laid down in the case of Outram v. Morewood,[] in which the court said that "a recovery in one suit upon issue joined on matter of title, is *103 equally conclusive upon the subject-matter of such title" in any subsequent action, as an estoppel.
Better opinion is, that the estoppel, where the judgment was rendered upon the merits, whether on demurrer, agreed statement, or verdict, extends to every material allegation or statement which, having been made on one side and denied on the other, was at issue in the cause, and was determined in the course of the proceedings.[*]
The allegation in the case of Ricardo v. Garcias,[] was, that the matters in issue on the second suit were the same, and not in any respect different from the matters in issue in the former suit, and the House of Lords held that the plea was sufficient  evidently deciding that nothing was open in the second suit which was within the scope of the issue in the former trial.[] Properly construed, the opinion of this court on this point in the case of the Packet Company v. Sickles,[§] is to the same effect, as plainly appears in that part of it in which the court say that if the record of the former trial shows that the verdict could not have been rendered without deciding the particular matter in question, it will be considered as having settled that matter as to all future actions between the parties. Applying that rule to the case at bar it is clear that a judgment rendered on demurrer settles every matter which was well alleged in the pleadings of the opposite party.
9. Separate examination of the authorities cited by the defendants, in view of their number, is impracticable, but it will appear, if they are carefully read and rightly applied, that they do not support the proposition under consideration. On the contrary, the decision of the court in the case of Gilbert v. Thompson,[] is that a judgment in a former action is conclusive where the same cause of action was adjudicated between the same parties, or the same point was put in issue on the record and directly found by the verdict of a jury; and the case of Merriam v. Whittemore et al.,[¶] is precisely to the *104 same effect. Unguarded expressions are found in the opinions in the case of Carter v. James,[*] but the decision turned upon the point that the cause of action was not the same in the pending suit as that litigated in the former action. For these reasons our conclusion is that the decision of the Circuit Court in sustaining the demurrer of the plaintiffs to the rejoinder of the defendants was correct, and that the plaintiffs were thereupon entitled to judgment.
10. In such cases, where the sum for which judgment should be rendered is uncertain, the rule in the Federal courts is that the damages shall, if either of the parties request it, be assessed by a jury.[]
But if the sum for which judgment should be rendered is certain, as where the suit is upon a bill of exchange or promissory note, the computation may be made by the court, or what is more usual, by the clerk; and the same course may be pursued even when the sum for which judgment should be rendered is uncertain if neither party request the court to call a jury for that purpose. Common law rules were substantially the same, except that "the court themselves might, in a large class of cases, if they pleased, assess the damages, and thereupon give final judgment."[]
Evidently a jury in this case was not necessary, but it was not error to hear proofs under the submission, as both parties assented to the course pursued.
Exceptions were taken to the ruling of the court in allowing interest upon the coupons, and the bill of exceptions states that the exception of the defendants was allowed, but it does not state what amount of interest was included in the judgment, nor give the basis on which it was computed. Judging from the amount of the sum found due, it is, perhaps, a necessary inference that interest was allowed on each coupon from the time it fell due to the date of the judgment, and if so, the finding was correct.
*105 Bonds and coupons like these, by universal usage and consent, have all the qualities of commercial paper.[*] Coupons are written contracts for the payment of a definite sum of money, on a given day, and being drawn and executed in a form and mode for the very purpose that they may be separated from the bonds, it is held that they are negotiable, and that a suit may be maintained on them without the necessity of producing the bonds to which they were attached.[] Interest, as a general rule, is due on a debt from the time that payment is unjustly refused, but a demand is not necessary on a bill or note payable on a given day.[] Being written contracts for the payment of money, and negotiable because payable to bearer and passing from hand to hand, as other negotiable instruments, it is quite apparent on general principles that they should draw interest after payment of the principal is unjustly neglected or refused.[§] Where there is a contract to pay money on a day fixed, and the contract is broken, interest, as a general rule, is allowed, and that rule is universal in respect to bills and notes payable on time.[] Governed by that rule this court in the case of Gelpcke v. Dubuque,[¶] held that the plaintiff, in a case entirely analogous, was entitled to recover interest.[**]
Necessity for remark upon the other exceptions is superseded by what has already been said in respect to the plaintiff's demurrer.
JUDGMENT AFFIRMED, WITH COSTS.
Mr. Justice MILLER, dissenting.
The doctrine of estoppel by a former judgment between the same parties is one of the most beneficial principles of our jurisprudence, and has been less affected by legislation *106 than almost any other. But its effect is to prevent any further inquiry into the merits of the controversy. Hence, with all the salutary influence which it exerts in giving permanence to established rights, in putting an end to angry contests, and preserving tranquillity in society, it can only be justified on the ground that the precise point, either of law or of fact, which is presented in the suit where the estoppel is pleaded, had been previously decided between the same parties or their privies, by a court of competent jurisdiction. The principle is equally available and potent whether it is set up by a defendant as an answer to a cause of action, or by a plaintiff to prevent the same defence being used in the second suit that was decided against in the first. In the former case, it must appear that the cause of action in the second suit was the same that it was in the first suit, or depended on precisely the same facts. In the latter case it must appear that the defence set up in the second suit was the same defence, or in other words, consisted of the same facts or points of law as that which was passed upon in the first suit.
It is true that some of the earlier cases speak as if everything which might have been decided in the first suit must be considered concluded by that suit. But this is not the doctrine of the courts of the present day, and no court has given more emphatic expression to the modern rule than this. That rule is, that when a former judgment is relied on, it must appear from the record that the point in controversy was necessarily decided in the former suit, or be made to appear by extrinsic proof that it was in fact decided. This is expressly ruled no less than three times within the last eight years by this court, to wit: in the Steam Packet Co. v. Sickles,[*] Same v. Same,[] Miles v. Caldwell.[] The principle asserted in these decisions is supported by an array of authority which I will not stop to insert here, but which may be found well digested and arranged in the notes of Hare and Wallace to the Duchess of Kingston's Case.[§]
The opinion just read asserts a different rule, and insists *107 that whatever might have been fairly within the scope of the pleadings in the former suit, must be held as concluded by the judgment.
In the case before us, the second plea clearly and distinctly avers that the bonds, which are the foundation of plaintiffs' action, were issued without any good or valuable consideration, and that this fact was known to the plaintiffs when they received them. I have examined in vain all the pleas filed by defendants in the former suit to discover any plea which set up this defence, or which raised such an issue that the want of consideration must have been passed upon in deciding the case. Nor can I discover any plea under which it might have been decided. Here, then, is a distinct, substantial defence to the bonds sued on, sufficient to defeat the action, which was never presented to the court in the former action, and therefore, never decided; and I am of opinion that the former suit did not conclude defendants' right to have this matter inquired into in this action.
NOTES
[*] Hogan v. Ross, 13 Howard, 173; 1 Chitty's Archbold's Practice (11th ed.), 288; 1 Tidd's Practice, ed. 1856, 563; Stephen on Pleading, 108; Bisbing v. Albertson, 6 Watts & Sergeant, 450; Cross v. Watson, 6 Blackford, 130.
[] Suydam v. Williamson et al., 20 Howard, 436; Gorman et al. v. Lenox, 15 Peters, 115.
[*] United States v. Boyd, 5 Howard, 29; Jones v. Thompson, 6 Hill, 621; Clearwater v. Meredith, 1 Wallace, 42.
[*] Wood v. Jackson, 8 Wendell, 9; Reed v. Locks and Canals, 8 Howard, 274; Rex v. St. Anne, 9 Q.B. 884; Greeley v. Smith, 1 W. & M. 181; Knox v. Waldoborough, 5 Maine, 185; Hull v. Blake, 13 Massachusetts, 155; Sweigart v. Berk, 8 Sergeant & Rawle, 305; Bridge v. Sumner, 1 Pickering, 371; 2 Taylor on Evidence, 1528; Harvey v. Richards, 2 Gallison, 231; Ridgely v. Spencer, 2 Binney, 70.
[] Cooke v. Graham, 3 Cranch, 229; Sprigg v. Bank of Mount Pleasant, 10 Peters, 264; United States v. Arthur, 5 Cranch, 261; Clearwater v. Meredith, 1 Wallace, 38; 1 Chitty's Pleadings, 668; Gorman v. Lenox, 15 Peters, 115.
[*] Stephen on Pleading, 143; Mercein v. Smith, 2 Hill, 210; Matthewson v. Weller et al., 3 Denio, 52; Townsend v. Jemison, 7 Howard 706.
[] Tubbs v. Caswell et al., 8 Wendell, 129; Bushell v. Lechmore, 1 Ld. Raymond, 369.
[*] Gray v. Pingry, 17 Vermont, 419; Perkins v. Walker, 19 Id. 144; 1 Greenleaf on Evidence, 12 ed. 566; Shelley v. Wright, Willes, 9.
[*] Doty v. Brown, 4 Comstock, 71.
[] 3 East, 346.
[] 4 Cowen, 559.
[§] Bouchaud v. Dias, 3 Denio, 243.
[*] 3 Cowen, 120.
[*] 1 Williams's Saunders, 337, n. 3; Stephen on Pleading, 155; 1 Saunders on Pleading and Evidence, 952; 1 Chitty's Pleading, 662.
[*] Manchester Bank v. Buckner, 20 Howard, 303.
[] Gilman v. Rives, 10 Peters, 298.
[] Richardson v. Boston, 24 Howard, 188.
[§] 6 Reports, 7.
[] 3 Denio, 244.
[*] Perkins v. Moore, 16 Alabama, 17; Robinson v. Howard, 5 California, 428
[] 1 Wallace, 43.
[] Christmas v. Russell, 5 Wallace, 303; Nowlan v. Geddes, 1 East, 634.
[§] 5 Wallace, 573.
[] Broom's Maxims (4th ed.), 321; Sparry's Case, 5 Reports, 61.
[*] Stafford v. Clark, 2 Bingham, 377.
[] Rex v. Duchess of Kingston, 20 State Trials, 538.
[] 3 East, 357.
[§] Hutchin v. Campbell, 2 W. Blackstone, 831.
[] Hopkins v. Lee, 6 Wheaton, 113; Lawrence v. Hunt, 10 Wendell, 83; Wood v. Jackson, 8 Id. 9; Young v. Black, 7 Cranch, 565.
[*] 4 Howard, 467.
[] 24 Id. 341.
[] Greathead v. Bromley, 7 Term, 455; Broom's Legal Maxims (4th ed.), 324.
[§] 2 Taylor's Evidence, § 1513; Henderson v. Henderson, 3 Hare, 115.
[] 3 East, 346.
[*] 2 Smith's Leading Cases, 6th ed. 787.
[] 12 Clark and Finelly, 400.
[] Stevens v. Hughes, 7 Casey, 381.
[§] 5 Wallace, 592.
[] 9 Cushing, 348.
[¶] 5 Gray, 316.
[*] 13 Meeson & Welsby, 137.
[] 1 Stat. at Large, 87, § 26; Renner et al. v. Marshall, 1 Wheaton, 218; Mayhew v. Thatcher, 6 Id. 129.
[] 2 Saunders on Pleading and Evidence, 218; 2 Archbold's Practice, 709.
[*] Mercer v. Hacket, 1 Wallace, 83; Meyer v. Muscatine, Ib. 384.
[] Knox Company v. Aspinwall, 21 Howard, 544; White v. Railroad, 21 Howard, 575; McCoy v. County of Washington, 7 American Law Register, 193; Parsons on Bills and Notes, 115.
[] Vose v. Philbrook, 3 Story, 336; Hollingsworth v. Detroit, 3 McLean, 472.
[§] Delafield v. Illinois, 2 Hill, 177; Williams v. Sherman, 7 Wendell, 112.
[] 2 Parsons on Bills and Notes, 393.
[¶] 1 Wallace, 206.
[**] Thomson v. Lee County, 3 Wallace, 332.
[*] 24 Howard, 333.
[] 5 Wallace, 580.
[] 2 Id. 35.
[§] 2 Smith's Leading Cases, from page 791 to the end of the volume.