### ROBERT M. HENING v. JAMES PUNNETT.

A purchaser at a judicial sale, under a judgment of the Supreme Court, in foreclosure, obtains a good title, even though an appeal has been taken from the judgment, and it is afterwards reversed, provided no stay of proceedings has been obtained upon the appeal.

Nor does it make any difference that the purchaser is a party to the foreclosure suit.

A judgment of a court having jurisdiction of the subject-matter and of the parties, is a complete protection to a purchaser under it, whether he be a party to the judgment or not.

Defendant having refused to complete a purchase of land, according to his contract, the plaintiff sold the land to another; *Held*, that this did not prevent him from afterwards bringing an action to recover damages for the breach of contract.

*Held*, further, that in such action he could recover what he had been obliged to pay to a broker for effecting the contract of sale, but could not recover a further sum which he had been obliged to pay as costs and counsel fees in defending a suit brought by the broker for his commission, in which the broker had obtained a judgment.

*Held*, also, that the defendant could maintain a counter-claim for any sums that he had paid as a part of the purchase money at the time of the execution of the contract, the performance of the contract having become impossible by the subsequent sale of the land to another by the plaintiff; that the reason of the rule, that as long as the vendor is not in default, and is willing to perform, no action can be maintained against him to recover back what he has received in part payment, ceases, when, after the breach by the vendee, the vendor himself puts it out of his power to perform by a sale and conveyance of the property to another.

## SPECIAL TERM, *November*, 1873.

THIS was an action to recover damages for a breach of contract to purchase real estate.

The complaint alleged that on April 4th, 1865, an agreement was made between the plaintiff and defendant, by which the defendant agreed to purchase certain real estate of which the plaintiff was the owner. That this agreement was made through one Findlay, a broker, who thereupon became entitled to receive from the plaintiff the sum of $500 as commissions. That defendant afterwards refused to perform his contract. That Findlay sued the plaintiff for his commission, and recovered a verdict for $500, for which, together with $43 69 costs, judgment was entered against the plaintiff, and which he had paid. That plaintiff had suffered other damage through the failure of the defendant to perform his contract, to the amount of $1,000.

The answer admitted the agreement, but set up the inability of the plaintiff at the time of the making of the agreement to convey a good title, inasmuch as his title was derived through a sale under a judgment of the Supreme Court, in an action to foreclose a mortgage, an appeal from which judgment was then pending and undecided in the Court of Appeals.

It also set up a counter-claim for $100, which had been paid to the plaintiff on account of the purchase money at the time of the execution of the agreement.

The other facts necessary to an understanding of the case appear by the opinion.

*Marsh & Wallis*, for plaintiff.

*Man & Parsons*, for defendant.

DALY, CH. J.—The plaintiff acquired and could convey a good title. He bought at a judicial sale, under a judgment of foreclosure in the Supreme Court, which judgment was subsequently affirmed by the Court of Appeals. The plaintiff, by his purchase at the judicial sale, obtained a good title, even if the judgment of foreclosure had been afterwards reversed, for the sale under the judgment was regular, no stay of proceeding having been obtained upon the appeal (*Gray* v. *Brignardello*, 1 Wallace, 627; *Gordon* v. *Canal Co.* 8 Am. Law Reg. N. S. 281; *Holden* v. *Sackett*, 12 Abb. Pr. 475; *Breese* v. *Bange*, 2 E. D. Smith, 474; *Wood* v. *Jackson*, 8 Wend. 9).

That the plaintiff was a party to the foreclosure suit, does not affect the question of title. " Parties," say the court, in *Parker's Heirs* v. *Anderson's Heirs* (5 B. Munroe, 445), " to a judgment or decree are, equally with all others, at liberty to bid and purchase property exposed for sale under the authority of a judgment or decree; and there is the same reason for protecting the interest acquired by a party under a purchase, as that of a stranger." But even if there were doubt upon the point, and the court would, upon the reversal of the judgment, order the property to be restored by the party to the judgment, there can be no doubt that if, in the meanwhile, it had been purchased from him in good faith by a third party for a valuable consideration, that the court would not disturb the title of the stranger; but would leave the party who obtained the reversal to such remedy as he might have against the prevailing party in the judgment, to obtain an equivalent for the property sold under the foreclosure. Thus, in the present case, if the defend-- ant had taken a conveyance of the property from the plaintiff, and paid him the consideration provided for in the contract of sale, he would have acquired a good title. That is, if he had

purchased in good faith, as he had contracted to do, even though, after the making of the contract, and before the acceptance of the conveyance and the payment of the price, he was informed that an appeal had been taken from the judgment to the Court of Appeals, his title, in my opinion, could not have been disturbed. It does not lie with the party who obtains a reversal of a judgment to complain, as he had it in his power to prevent a sale, by giving security and obtaining a stay of proceedings; and this being the case, a judicial sale made pursuant to a judgment of a court having jurisdiction of the subject-matter and of the parties, ought to be, and, in my opinion, is a complete protection to a purchaser under it, whether he be a party to the judgment or not.

The defendant, after the making of the contract, was apprised that the appeal to the Court of Appeals was without security, and consequently did not stay proceedings upon the judgment. His legal adviser, Mr. Man, obtained from the appellant's attorney, a copy of the appeal book, and took it to the defendant; so that it may be assumed that both he and the counsel knew that there had been no stay upon the appeal. His counsel, no doubt, advised him that it was not safe to take the property pending the appeal, as the judgment might possibly be reversed; and he, it may be supposed, refused to take it, that being the opinion of his professional advisers. That they were mistaken in the advice they gave, however, does not relieve him from the obligation of performing his contract, or from the consequences arising from his refusal to do it. It is not for him or his counsel to say whether the contract is to be performed or not. He entered into it, and it is for the court to judge whether the ground upon which he refused to complete it excused him from the performance of it (*Rigney* v. *Coles*, 6 Bosw. 485). I must hold that it did not; that a valid title passed to the plaintiff under the judicial sale, and that a deed from him to the defendant of the property, when the plaintiff offered and was willing to convey, would have vested in the defendant a complete and perfect title.

I shall not inquire into the effect of the alleged easement under the contract, as the existence of the easement was not

given as the reason for not taking the property; and, for all I know, it may have been in the plaintiff's power, if the objection had been made, to have removed it.

That the plaintiff afterwards sold the property can in no way affect his claim to recover the damage he was put to by the defendant's refusal to take it. He sold it after the defendant had repeatedly and positively refused to take it, and the plaintiff then had a right to sell it. He does not seek to charge the defendant with any loss arising from the difference between the contract price and the amount subsequently obtained for it. His action is for damages directly resulting from the defendant's failure to perform his contract, that is, the commission which the broker earned, and which, in a suit brought by the broker, it was adjudged that the plaintiff should pay, and which he did pay. This was a loss imposed upon the plaintiff in consequence of the defendant's refusing to take the property, and this amount, with interest, the plaintiff is entitled to recover. I do not think, however, that he can charge the defendant with the costs of defending the suit brought by the broker, or with the fee of $250 paid by him to his counsel for his services in the defense. The judgment in that suit must be regarded as adjudging that he was liable to the broker; and that being the case, he cannot charge the defendant with the costs of a defense which he did not succeed in establishing. The recovery of the judgment by the broker for the full amount claimed by him, shows that the amount should have been paid without suit.

The defendant is entitled to set off the $100 paid by him at the time of the making of the contract. It is well established that a party who makes a contract to purchase property, and refuses, without lawful excuse, to perform it, cannot maintain an action to recover back money paid as earnest or in part performance at the time of the execution of the contract, if the other party is able and willing to perform (*Dowdle* v. *Camp*, 12 Johns. 451). But such is not the case here. When the plaintiff brought this action to recover the damages he had sustained in consequence of the defendant's refusal to perform, the plaintiff had sold the property. He is not now able to

convey it to the defendant, and when the vendor has parted with the title, so that he cannot thereafter perform on his part, he has no right to retain the money received in part payment at the time of the execution of the executory contract (*Abbott v. Draper*, 4 Denio, 54). As long as the vendor is not in default, and is able and willing to perform the contract on his part, no action can be maintained against him to recover the money back; but the reason of this rule ceases when he parts with the property, and puts it out of his power to perform the contract thereafter on his part. There is no reason why he should after that retain the money received in part payment of a contract which cannot now be performed. He may bring an action for damages for the loss or injury he has sustained by reason of the other party refusing to fulfil his contract; and if his damages be greater than the amount he received in part payment, he may recover an amount sufficient to reimburse him fully for his actual loss; or if the other party bring an action to recover back what he paid the vendor, in that action may counter-claim the damages he suffered by the breach of the contract. When the vendee refuses to take the property, and pay for it, the vendor, if he thinks proper, may sell or dispose of it. If he does so, however, he cannot retain what he received in part payment, distinct and independent of his general remedy for damages, which is what the plaintiff insists upon in this action. He seeks not only to recover the $500 paid to the broker, which is all the damage shown to have resulted from the breach of the contract, but insists upon his right to retain in addition the money received from the defendant in part payment of the contract. This he cannot do.

Judgment for plaintiff for $400, and interest, besides costs.